578 A.2d 555

**BROWN TRANSPORT CORPORATION, Petitioner,**

v.

**COMMONWEALTH of Pennsylvania, PENNSYLVANIA HUMAN RELATIONS COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 4, 1990.

Decided June 22, 1990.

546

Walter O. Lambeth, Jr., with him, Nancy F. Reynolds Elarbee, Thompson & Trapnell, and Elizabeth A. Dougherty, McNees, Wallace & Nurick, for petitioner.

Elisabeth S. Shuster, Chief Counsel, with her, Francine Ostrovsky, Asst. Chief Counsel, for respondent, Pennsylvania Human Relations Com'n. N. Christopher Menges, Menges & Snyder, for respondent, Stephen L. Soffer.

Before CRUMLISH, Jr., President Judge, and CRAIG, COLINS, PALLADINO, McGINLEY, SMITH and PELLEGRINI, JJ.

McGINLEY, Judge.

Brown Transport Corporation (BTC) petitions for review of an order of the Pennsylvania Human Relations Commission (PHRC) directing BTC: (1) to cease and desist from either terminating any employee because of that employee's religion or taking any adverse action in retaliation against any employee who opposes an employment practice that he believes violates the Pennsylvania Human Relations Act (PHRA), Act of October 27, 1955, P.L. 744, *as amended,* 43 P.S. §§ 951–963; (2) to make reasonable attempts to accommodate any employees' objections to religious influences in the workplace; (3) to notify its employees in the Commonwealth of Pennsylvania that BTC employment decisions shall be made on the basis of legitimate factors other than an employee's religious beliefs; (4) to pay to complainant Stephen L. Soffer (Soffer), within thirty days, the lump sum of $22,980.30, which represents back pay from June 30,

1984 to July 1988 and other employment related costs; (5) to pay Soffer interest of 6% per annum from June 29, 1984 until payment is made; and (6) within thirty days, to report on the manner of its compliance with the terms of the order.

BTC is an independently owned motor carrier company with sixty-nine full service truck terminals throughout the United States. On April 9, 1981 BTC hired Soffer, a member of the Jewish religion, to serve as its York terminal night operations officer. At the time Soffer was hired, the York terminal manager was Michael Dansic (Dansic). In May 1982, Thomas Wilson (Wilson) replaced Dansic as York terminal manager. Wilson was Soffer's immediate supervisor.

In June 1983, BTC paychecks began to include Bible verses printed on the face of the checks. When the Bible verses appeared on Soffer's paychecks, he complained to Wilson and requested that the inscriptions be deleted from his checks. Approximately four months later, Soffer checked with Wilson regarding the status of his request. At this time, Wilson told Soffer to be satisfied that he was receiving a paycheck. Wilson did not ignore Soffer's request and, pursuant to instructions from his supervisor, suggested to Soffer that Soffer write to Claude Brown, the founder of BTC, to express his displeasure with the paychecks. The Bible verses continued to be printed on Soffer's paychecks throughout the remainder of his employment with BTC.

Also, in January, 1984, BTC re-established a company newsletter entitled "Brownie Sez" (Brownie Sez) which had been discontinued in August, 1970. Soffer was offended by the religious content of certain articles in Brownie Sez and complained to Wilson regarding some portions of the January 1984 edition.

In January 1984, Wilson was promoted to district manager but remained at the York terminal. Wilson hired Paul Timmens (Timmens) to replace him as terminal manager. During the week of March 19, 1984 Soffer was sent to Edison, New Jersey to train a new BTC night operations

supervisor. On May 1, 1984 Timmens submitted an evaluation of Soffer in which Timmens rated Soffer excellent in job proficiency and good in employee and customer relations. During Soffer's entire period of employment with BTC he was never given less than an excellent rating regarding job proficiency. He received merit raises at regular intervals.

However, on June 29, 1984, Timmens abruptly terminated Soffer allegedly as a result of his inconsistent job performance and poor attitude. At the time of his termination, Soffer was instructed to take his personal possessions and not return to the property. On September 25, 1984, Soffer filed a complaint with the PHRC. On December 31, 1984, Soffer's complaint against BTC was amended. Soffer alleges in his complaint that BTC violated Section 5(a) of the PHRA, 43 P.S. § 955(a)[1] by dismissing him because of his Jewish religion, and subjecting him to religious harassment. The PHRC conducted an investigation which substantiated Soffer's allegations of discrimination. Efforts at conciliation between the PHRC and the parties were unsuccessful. Consequently, the matter was scheduled for a hearing before Hearing Examiner Carl H. Summerson (Hearing Examiner).

During the hearing held on March 2–3, 1989, Soffer submitted a motion to amend the complaint seeking to add an allegation that BTC violated Section 5(d) of the PHRA,

**1.** Section 5(a) of the PHRA, 43 P.S. § 955(a) provides in pertinent part:

It shall be an unlawful discriminatory practice, unless based upon a bona fide occupational qualification, or in the case of a fraternal corporation, or except where based upon applicable security relations established by the United States or the Commonwealth of Pennsylvania;

(a) For any employer because of the race, color religious creed, ancestry, age, sex, national origin or non-job related handicap or disability of any individual to refuse to hire or employ, or to bar or to discharge from employment such individual, or to otherwise discriminate against such individual with respect to compensation, hire, tenure, terms, conditions or privileges of employment, if the individual is the best able and most competent to perform the services required.

43 P.S. § 955(d),[2] by discharging Soffer in retaliation for his opposition to BTC's inclusion of Bible verse inscriptions on his paycheck and the religious content of certain articles in Brownie Sez. The Hearing Examiner, in accordance with Section 12(a) of the PHRA, 43 P.S. § 962(a),[3] construed Soffer's allegations as sufficient to establish that BTC retaliated against Soffer by dismissing Soffer because of his complaints that he was being subjected to religious propaganda in the workplace. The Hearing Examiner also noted that adding a specific reference to Section 5(d) of the PHRA was an unnecessary technicality.

After hearing, the Hearing Examiner made fifty-four findings of fact and fifteen conclusions of law supporting his recommendation that BTC unlawfully discriminated against Soffer in violation of Sections 5(a) and (d) of the PHRA by discharging Soffer because of his religion and in retaliation for his having opposed BTC practices found to be in violation of the PHRA. The PHRC subsequently adopted the recommendations of the Hearing Examiner and issued an August 3, 1989 order directing BTC to cease and desist from its discriminatory practices, accommodate their employees' objections to religious influences and pay Soffer back pay to July 1988 and other employment related costs.

On appeal BTC presents four issues for our review. First, BTC contends the PHRC erred in allowing Soffer to add a new claim for retaliatory discharge during the hearing. Second, BTC contends that PHRC's findings of retaliation, religious discrimination, harassment, and failure to

**2.** Section 5(d) of the PHRA, 43 P.S. § 955(d) provides:
  It shall be an unlawful discriminatory practice....
  (d) For any person, employer, employment agency or labor organization to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under this act.

**3.** Section 12(a) of the PHRA, 43 P.S. § 962(a) provides:
  The provisions of this act shall be construed liberally for the accomplishment of the purposes thereof, and any law inconsistent with any provisions hereof shall not apply.

accommodate were unsupported by substantial evidence. Third, BTC contends that the PHRC erroneously applied the PHRA to the facts in this case. Fourth, BTC contends that the PHRC erred by awarding Soffer punitive or compensatory damages which do not constitute lost wages or benefits.

■ Our scope of review of a decision of the PHRC is limited to a determination of whether there was a violation of constitutional rights, whether there was an error of law or whether the findings of fact necessary to support the adjudication are supported by substantial evidence. *Pennsylvania State Police v. Pennsylvania Human Relations Commission*, 127 Pa. Commonwealth Ct. 436, 561 A.2d 1320 (1989).

■ BTC's first contention is that the PHRC should not have permitted Soffer to add a claim under Section 5(d) of the PHRA, 43 P.S. § 955(d), for retaliatory discharge. Specifically, BTC contends the PHRC violated Section 9(e) of the PHRA, 43 P.S. § 959(e) which provides that "[t]he Commission or the complainant shall have the power reasonably and fairly to amend any complaint...." BTC argues that the PHRC acted unreasonably in allowing Soffer to add the retaliatory discharge claim at the close of Soffer's evidence during the hearing.

Section 12(a) of the PHRA, 43 P.S. § 962(a) provides that the provisions of the PHRA must be construed liberally for the accomplishment of its purposes. The Hearing Examiner, in his opinion, construed Soffer's complaint as sufficiently alleging that BTC dismissed Soffer in retaliation for his objections to the religious content of Brownie Sez and the Bible verses printed on his paychecks. A review of Soffer's amended complaint, filed December 31, 1984, indicates that the Hearing Examiner did not err. Soffer's proposed amendment served only to clarify the claim of retaliatory discharge already set forth in the allegations of his amended complaint. Thus, to sustain a claim for retaliatory discharge, Soffer needed only to establish the facts alleged

in his December 31, 1984 amended complaint. The Hearing Examiner's decision to allow Soffer's claim for retaliatory discharge was consistent with the stated purpose of Section 12(a) of the PHRA. Accordingly, we find no error.

BTC's second contention is that the PHRC's findings of fact regarding BTC's retaliation, religious discrimination, harassment, and failure to accommodate were unsupported by substantial evidence. The essence of BTC's contention is that the PHRC should have credited Wilson and Timmens' testimony regarding the reason's for Soffer's discharge, i.e., inconsistent job performance and poor employee relations, and should have discredited Soffer's testimony to the contrary. BTC argues that the contradictions and conflicts in the testimony of BTC witnesses Wilson and Timmens relied upon by the Hearing Examiner to discredit Wilson and Timmens were based on factual determinations unsupported by substantial evidence.

Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Further, substantial evidence supporting a finding of religious discrimination may be circumstantial and based on inferences. *Consumer Motor Mart v. Pennsylvania Human Relations Commission*, 108 Pa. Commonwealth Ct. 59, 529 A.2d 571 (1987). Also, in the final analysis, it is the PHRC's task to weigh the evidence, both direct and circumstantial, to credit and discredit testimony, to draw inferences and make ultimate findings of fact as to whether a violation of the PHRA occurred. *Pennsylvania State Police v. Pennsylvania Human Relations Commission*, 116 Pa. Commonwealth Ct. 89, 542 A.2d 595 (1988).

The PHRC, in its Finding of Fact No. 52, states: "Neither Wilson's nor Timmens' testimony regarding BTC's rational [sic] for Soffer's dismissal was wholly credible." PHRC's Opinion August 3, 1989 at 12. Clearly, credibility determinations are within the province of the PHRC. *Pennsylvania State Police*. Credibility determinations may be based on demeanor as well as conflicts in testimony.

The PHRC's determination that Wilson's and Timmens' testimony lacked credibility was based on obvious conflicts between their reported evaluations of Soffer's job performance and their testimony that Soffer performed his duties inconsistently and displayed a poor attitude toward customers, fellow employees and management.

The PHRC noted that prior to January, 1983, when Soffer first complained about the Bible verses printed on his paychecks, Soffer was consistently given the highest possible ratings for job performance on company performance evaluations. Soffer maintained these high ratings until the last two months of his employment. The PHRC specifically noted Soffer's April, 1984 performance evaluation wherein Timmens remarked "Steve [Soffer] does an excellent job, is always here when needed.... Good work on phone, knows his responsibilities and performs them. I feel he merits this raise." PHRC Opinion August 3, 1989 at 32. However, at the hearing, Timmens testified that Soffer was a problem employee whose pending raise had to be held back until he manifested positive changes. Despite Timmens' testimony that Soffer's raise was held up for thirty days, Soffer's evaluation indicates he was given the raise on time. Also, Timmens' testimony that Soffer maintained poor relations with BTC customers conflicts with Soffer's April, 1984 evaluation. PHRC opinion at 33.

With regard to Timmens' testimony that Soffer questioned authority, by questioning loading patterns, the PHRC noted that Soffer had been commended by the district vice president for his efforts in this area. PHRC Opinion at 34. The PHRC also noted that BTC failed to produce any witnesses to corroborate Wilson's and Timmens' testimony regarding Soffer's alleged shortcomings in employee and customer relations, and poor job performance. On the other hand, Soffer presented the testimony of LuAnn Leppo (Leppo) the billing clerk, and Derek R. Koller (Koller), a former salesman with BTC. Both stated that Soffer never had any problems with customers. Leppo, who spent the most time with Soffer in the terminal,

testified that she never heard of a hint of a complaint from anyone regarding Soffer. PHRC Opinion at 33. Koller, who Timmens testified had complained about Soffer, stated at the hearing that he never had any customer problems involving Soffer and had never complained to Timmens regarding Soffer. PHRC opinion at 35.

The PHRC further noted that, after Soffer had complained about the paychecks in June and October 1983, Wilson referred to Soffer in a December, 1983 memorandum to management as the "mouse that roars" and "jaws," and described Soffer as "afflicted with a severe case of hoof and mouth disease of the non-anthrax type." PHRC opinion at 36–37. Wilson's memorandum also stated that Soffer's vocalization stunted his career growth. The PHRC opined that the career stunting referred to in December 1983 mushroomed into a June 1984 career termination after Soffer began complaining about the religious content of Brownie Sez. PHRC Opinion at 37. Substantial evidence supporting a finding of discrimination may be circumstantial and based on inferences. *Consumer Motor Mart.* Accordingly, we conclude that the findings of the PHRC are supported by substantial evidence.

BTC's third contention is that the PHRC erred in its application of the law to the facts by concluding that BTC committed acts of retaliation and harassment against Soffer. In *Consumers Motor Mart v. Pennsylvania Human Relations Commission,* 108 Pa. Commonwealth Ct. 59, 529 A.2d 571 (1987) this Court noted that the complainant bears the burden of proving a *prima facie* case. The burden then shifts to the employer to rebut the inference of discrimination by producing a legitimate, nondiscriminatory explanation for its conduct. If the employer meets this burden, the complainant must then show, by a preponderance of the evidence, that the reasons offered by the employer to justify its conduct are a pretext. *Id.,* 108 Pa.Commonwealth Ct. at 62, 529 A.2d at 573.

With respect to Soffer's claim for retaliatory discharge, the PHRC made the following relevant findings of fact:

10. In June 1983, BTC paychecks began to include Bible verses on the face of employee paychecks. (N.T. 72, C.E. 2, S.F. 6)

11. When the Bible verses first appeared on Soffer's checks, Soffer expressed his disapproval to Wilson and asked Wilson to take steps to have the verses removed from his paychecks. (N.T. 74, 90, 238, 280)

12. Wilson told Soffer he would look into the matter. (N.T. 74, 238)

13. Approximately 4 months later, Soffer checked with Wilson regarding the status of Soffer's prior request to have the Bible verses removed from his checks. (N.T. 74)

14. In effect, Wilson indicated to Soffer, "Be happy you have a job and are getting a paycheck." (N.T. 74, 239, 281). Wilson had checked into the matter with Wilson's supervisor, Don Pries, (hereinafter "Pries"), who simply confirmed that it was a senior management decision. (N.T. 280). Pries also instructed Wilson to suggest to Soffer that he write to Brown expressing his displeasure. Wilson then conveyed this to Soffer. (N.T. 281)

15. The Bible verses continued to be printed on employee paychecks throughout the remainder of Soffer's employment with BTC. (N.T. 75, C.E. 2)

16. Beginning in January, 1984, BTC reestablished a company newsletter, (hereinafter "Brownie Sez"), which had previously been discontinued in July/August 1970. (N.T. 75, C.E. 3)

17. Being offended by the perceived religious content of certain articles in the "Brownie Sez" publication, Soffer approached Wilson complaining with respect to being offended by the religious aspects of some portions of the January, 1984, publication. (N.T. 78)

18. Wilson acknowledged the Complainant's complaint regarding "Brownie Sez." (N.T. 79)

19. Subsequently, the March, April, and May 1984 editions of "Brownie Sez" contained matters Soffer perceived as religious and was offended thereby. (N.T. 76)

20. Soffer's main contention with the sporadic religious connotations in the "Brownie Sez" and continual Bible verses being typed on his checks was that, in his opinion, religion should not be part of business affairs. (N.T. 211)

21. Soffer also would have been offended if the same perceived religious matters he found objectionable had discussed or highlighted aspects of his own religion. (N.T. 184, 210, 242, 246)

. . . .

23. Being Jewish, Soffer reflectively questions [sic] his job security and felt uneasy to a degree as he queried whether one needed to be a Christian to proceed into upper management within BTC. (N.T. 73, 237, 247)

24. At no time did either the verses on paychecks or articles in the Brownie Sez hinder Soffer's job performance. (N.T. 236, 237)

25. Approximately January/February 1984, Wilson was promoted to District Manager but remained at the York facility. (N.T. 69, 269, 288)

26. Wilson had the responsibility to hire his replacement as the York facility terminal manager. (N.T. 287). Wilson hired Paul Timmens, (Hereinafter "Timmens"), as his replacement. (N.T. 161, 269, 287, 310)

27. Soffer testified that he brought up the issue of the verses on paychecks and Brownie Sez articles with Timmens, (N.T. 239), but Timmens testified that he could not recall Soffer ever mentioning it. (N.T. 369). In a prior deposition, Soffer indicated he had not told Timmens about being offended by the checks or articles in Brownie Sez. (N.T. 250, 251, 252)

28. However, Timmens did "recall hearing something about it", but testified that he "in all honesty" could not recall from whom. (N.T. 369)

29. On June 29, 1984, Timmens abruptly terminated Soffer. (N.T. 62, 244, 294, 336 R.E. 6, S.F. 10). Soffer

was instructed to get his personal possessions, take them, and do not come back on the property. (N.T. 244) PHRC's Opinion, August 3, 1989, at 6–8.

The PHRC's findings, which are supported by substantial evidence, indicate that subsequent to engaging in a protected activity (objecting to the Bible verses on his paychecks and the religious content of Brownie Sez) Soffer was subjected to the adverse employment consequence of termination. Further, the short time period between Soffer's complaints in January 1984 and his June 29, 1984 termination reveal a temporal proximity that justifies the Hearing Examiner's conclusion that there was a causal connection between Soffer's objections and his termination. The PHRC considered BTC's explanation a pretext and found that BTC's true motive for discharging Soffer was retaliatory and therefore in violation of Section 5(d) of the PHRA, 43 P.S. § 955(d).

Next, with respect to the religious harassment claim, Soffer testified that the Bible verses on his paychecks and the religious material in Brownie Sez caused him to question his job security and led him to believe that a BTC employe needed to be Christian to be promoted into upper management. This testimony supports the PHRC's conclusion that BTC's conditions of employment constituted religious harassment of Soffer. Furthermore, the PHRC's findings that BTC made little or no effort to remove the religious content from Soffer's paychecks or his copy of Brownie Sez, supports the PHRC's conclusion that BTC failed to reasonably accommodate Soffer's religious-based objections.

■■■ BTC's fourth contention is that Soffer was precluded by limitations in Section 959(f) of the PHRA, 43 P.S. § 959(f), from recovering any sums in the nature of either punitive or compensatory damages. In support of its position, BTC relies on *Protos v. Volkswagen of America, Inc.*, 797 F.2d 129 (3rd Cir.1986), wherein the United States Court of Appeals for the Third Circuit, held that, under the penalty provisions of Title VII, 42 U.S.C. § 2000e–5(g), a

complainant is not entitled to compensatory or punitive damages, including interest that would have been earned on lost wages. *Id.* at 138. However no such limitations exist in Section 959(f) of the PHRA. In *Consumer Motor Mart v. Pennsylvania Human Relations Commission,* 108 Pa. Commonwealth Ct. 59, 529 A.2d 571 (1987), this Court affirmed a PHRC order awarding a complainant 6% interest on a lump sum award of $29,186.00 in an action involving claims for harassment and retaliatory discharge under the provisions of the PHRA. *Id.,* 108 Pa.Commonwealth Ct. at 60–61, n. 1, 529 A.2d at 572, n. 1. Accordingly, we find no error in the PHRC's award of damages.

The order of the PHRC is affirmed.

### ORDER

AND NOW, this 22nd day of June, 1990, the order of the Pennsylvania Human Relations Commission in the above-captioned proceeding is affirmed.