

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-14-1997

# Rush v. Scott Spec Gases Inc

Precedential or Non-Precedential:

Docket 96-1606

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"Rush v. Scott Spec Gases Inc" (1997). *1997 Decisions.* Paper 107.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/107

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed May 14, 1997

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 96-1606

CHRISTINE RUSH

v.

SCOTT SPECIALTY GASES, INC.,

<u>Appellant</u>

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 95-00748)

Argued April 14, 1997

BEFORE: GREENBERG, ALITO, and SEITZ, <u>Circuit Judges</u>

(Filed: May 14, 1997)

Leslie A. Hayes (argued)
Randy Karafin Hubert
Connolly, Epstein, Chicco
Foxman, Engelmyer, and Ewing
1515 Market Street, 9th Floor
Philadelphia, PA 19102

<u>Attorneys for Appellee</u>

Alfred W. Putnam, Jr. (argued)
J. Freedley Hunsicker, Jr.
Patricia Proctor
Drinker, Biddle, and Reath
Philadelphia National Bank
Building
1345 Chestnut Street
Philadelphia, PA 19107-3496

 Attorneys for Appellant

**OPINION OF THE COURT**

GREENBERG, Circuit Judge.

I. INTRODUCTION

Appellant, Scott Specialty Gases, Inc. ("Scott"), appeals from a judgment entered in favor of its former employee, Christine Rush. In her complaint Rush asserted that Scott discriminated against her in promotion and training on the basis of her sex and subjected her to a hostile environment through sexual harassment. She also claimed that Scott improperly constructively discharged her and retaliated against her for filing a complaint against it with the Equal Employment Opportunity Commission. Finally, she asserted federal and state Equal Pay Act claims and state common law tort and contract claims. The jury awarded Rush several million dollars in compensatory and punitive damages on her discrimination in promotion and training, sexual harassment, and constructive discharge claims, but on Scott's motion, the district court found that the damages were excessive and significantly reduced them in a remittitur. Rush accepted the remittitur rather than going through a new trial, so the court entered judgment for the reduced amounts. Scott has filed a timely appeal. We have jurisdiction under 28 U.S.C. § 1291, and the district court had jurisdiction under 28 U.S.C. § § 1331 and 1367(a).

Scott contends that Rush's employment discrimination claim based on failure to promote and train is time barred

2

and cannot be saved by application of the continuing violation theory. We agree; allowing Rush to sue on the failure to promote and train claim, and to introduce evidence supporting that claim, prejudiced Scott's case on Rush's other claims because we cannot say that the failure to promote and train evidence did not contribute to the jury's findings of liability on the sexual harassment hostile environment and constructive discharge claims. Furthermore, we cannot say that the evidence with respect to the failure to promote and train claim did not affect the computation of the damages awarded. Therefore, we will reverse the judgment entered in favor of Rush and remand the case to the district court to enter judgment in Scott's favor on Rush's failure to promote and train claim and to grant a new trial on her sexual harassment and constructive discharge claims. For reasons which we explain below the retaliation, Equal Pay Act, and common law claims are no longer in the case and thus will not be retried.

II. FACTS AND PROCEDURAL HISTORY

Scott employed Rush as a Laboratory Technician I from September 11, 1989, until her resignation on June 10, 1993. Periodically, Rush changed from a full-time to a part-time status to pursue her education. In September 1990, Rush went part time so that she could take course work in chemistry. During the fall of 1990, Scott conducted a flask-making course which trained some Lab Tech Is in skills needed for promotion to Lab Tech II analyst positions. Scott intended to use the training course as a promotion device and planned to promote the highest performing Lab Tech Is to Lab Tech IIs. Rush claims she was not informed about the class, although several male employees were, and that Scott thereby deprived her of an important opportunity for training and advancement within the laboratory. Rush also claims that she and Scott were unable to agree upon an arrangement through which she could watch the course on videotape so that she could become eligible for promotion. Ultimately, in early 1991 Scott promoted three men with less seniority than Rush to Lab Tech II analyst positions based on their performance in the flask-making class.

3

In June 1991, Rush filed a charge with the Equal Employment Opportunity Commission, claiming that Scott discriminated against her in training and promotion because of her sex. She based this charge on her exclusion from the flask-making course and the attendant opportunity for promotion as well as other alleged discrimination in training, promotion, and work assignments. In the fall of 1991, Rush and Scott entered into a written settlement agreement in which Rush agreed not to file suit against Scott based on her EEOC charge. App. at 2173. Rush also executed a release in which she agreed to:

release and forever discharge Scott. . . of and from all claims and causes of action alleged in, or which could have been alleged in a Charge filed with the Equal Opportunity Commission and numbered Charge No. 170911136 and any other charge or complaint she has filed or could have filed with any other agency or court alleging discrimination in connection with her employment by Scott, including without limitation, her claim that she discriminatorily was denied promotion.

App. at 2172. In return, Scott agreed to meet with Rush to discuss its policy regarding training and promotion; to provide Rush the same training and experience other employees seeking promotion to Lab Tech II analyst positions received; and to consider Rush for the next available Lab Tech II analyst position. App. at 2173.

Following the execution of the settlement agreement, Rush met with lab manager Mark Sirinides, who explained the requirements for promotion to a Lab Tech II analyst position. In March 1992, Scott allowed Rush and some of her co-workers to take the flask-making course via videotape. She received the highest grade in the class. On June 15, 1992, Scott certified to the EEOC that Rush had completed the required training course and, in accordance with the settlement agreement, would be considered "when a vacancy in Lab Tech II Analyst position commensurate with her skills occurs." App. at 2193.

In June 1992, Scott promoted a male Lab Tech I, Garren Knoll, to a Lab Tech II position. Rush contends, and Scott

4

agrees, that it did not consider Rush for this promotion, explaining that in its view Rush was not qualified for this position. According to Scott, it promoted Knoll to a computer technician or automation position, not a laboratory analyst position. Also, in the summer of 1992, Scott hired a male college student, Mark Carpenter, on a part-time basis to do Lab Tech II work. Scott claimed that because this was a temporary, part-time position, Rush was not eligible for it. During her tenure at Scott, Scott never promoted Rush who remained a Lab Tech I.

Rush claims that after she filed her 1991 EEOC charge, her male co-workers and some supervisory and managerial employees sexually harassed her. She asserts that she unavailingly complained about this harassment at various levels of Scott's management. Sirinides wrote a memo to plant manager John Post outlining Rush's complaints and asking for guidance and training on how to deal with such complaints. Neither Post nor regional vice-president William Gittler, both of whom saw Sirinides' memo, responded to the complaints.

In March 1993, Rush again arranged to work part time; her application noted that she based her request on her desire to pursue her education and that she was dissatisfied with her working environment. On May 27, 1993, Rush and some co-workers arrived late to work, but she claims that Ted Neeme, a group leader in the laboratory who apparently had supervisory duties, singled her out for an oral reprimand. App. at 468-69. A shouting match ensued between Rush and Neeme, and then Rush threw her time card on Neeme's desk and left the premises. App. at 471-72. She did not return to Scott until June 1, 1993.

On June 10, 1993, Rush resigned. At some point during that day, either just before her resignation, or just after, a meeting was held at Scott's premises from which Rush was excluded. At this meeting, Post, the plant manager, asked Rush's co-employees how Scott should discipline her for her earlier outburst to Neeme and permitted them to criticize Rush. App. at 426, 486. On her resignation form, Rush noted that she felt forced to leave Scott. App. at 2167.

On November 1, 1993, Rush filed a discrimination claim with the Pennsylvania Human Relations Commission; the

5

charge was cross-filed with the EEOC. After Rush received a right to sue letter, she filed suit in the district court against Scott on February 8, 1995. Her complaint alleged discrimination on the basis of sex in violation of Title VII, the Federal and Pennsylvania Equal Pay Acts, and the Pennsylvania Human Relations Act ("PHRA"). In addition, Rush asserted a claim against Scott for allegedly retaliating against her for filing the first EEOC charge and claims under Pennsylvania common law. She also claimed that Scott had constructively discharged her.

Prior to the trial, both parties moved for summary judgment. As germane to this opinion, Scott claimed that all of Rush's claims that accrued prior to January 5, 1993, i.e., 300 days before she filed her second EEOC claim, were time barred. Of course, Scott promoted Knoll and hired Carpenter long before January 5, 1993, and thus it argued that Rush could not base a claim on those employment actions. Nevertheless, the district court denied Scott's motion for summary judgment to the extent it was predicated on the time bar, reasoning that the case involved a violation throughout her employment at Scott. Rush v. Scott Specialty Gases, Inc., 914 F. Supp. 104, 106-07 (E.D. Pa. 1996). The court, however, granted Scott summary judgment on the Pennsylvania Equal Pay Act claim and granted it partial summary judgment on Rush's common law claim.

At the ensuing two-week trial, the jury found in favor of Rush on her Title VII and PHRA failure to promote and train, sexual harassment, and constructive discharge claims, and awarded her $203,000 in lost wages, $1,000,000 in pain and suffering, and $3,000,000 in punitive damages. However, the jury found for Scott on Rush's retaliation claim. The court dismissed the Federal Equal Pay Act claim on Scott's motion under Fed. R. Civ. P. 50; thus that claim is no longer in the case. Rush elected not to proceed with her remaining common law claim at trial, and we thus are not concerned with that claim.

Following the return of the verdict, Scott moved for judgment as a matter of law or a new trial, or, in the alternative, for a remittitur. The district court denied the motion for judgment as a matter of law on the grounds that

6

the evidence supported the verdict. <u>Rush v. Scott Specialty Gases, Inc.</u>, 930 F. Supp. 194, 197 (E.D. Pa. 1996). The district court also found that although a new trial was not warranted on the basis of the weight of the evidence or because of any evidentiary errors or improper jury instructions, the awards for pain and suffering and punitive damages were excessive. <u>Id</u>. at 199, 202. Accordingly, the court denied the motion for a new trial but it conditioned the denial on Rush's acceptance of a remittitur in the amount of $900,000 on the pain and suffering award and a remittitur of the punitive damages award in the amount of $2,700,000. The remittitur left Rush with an award of $203,000 in compensatory damages, $100,000 for pain and suffering, and $300,000 for punitive damages. Rush agreed to this remittitur, and on July 15, 1996, the court entered judgment for Rush in the amount of $603,000. The court subsequently granted Rush prejudgment interest and awarded her counsel fees of $210,062.50 and costs of $11,562.05. Scott has filed a timely appeal.

III. DISCUSSION

Scott argues that Rush did not administrativelyfile her failure to promote and train and her sexual harassment claims in a timely manner so this action largely is barred. Scott also advances challenges to the jury instructions, evidentiary rulings, and sufficiency of the evidence and asserts that the PHRA does not provide for punitive damages. We conclude that the hostile environment sexual harassment claim was timely, the failure to promote and train claim was time barred, and the introduction of evidence with respect to Scott's failure to promote and train Rush based on her sex infected the entire trial. Accordingly, we will reverse the judgment in favor of Rush and remand for a new trial on Rush's hostile environment sexual harassment and constructive discharge claims and for entry of judgment in favor of Scott on the failure to promote and train claim. This disposition makes it unnecessary to consider Scott's other assertions of error.

A. <u>The Continuing Violation Theory</u>

The parties are in agreement that under Title VII the ordinary time for filing a charge of employment

7

discrimination with the EEOC is 300 days after the alleged discrimination when the charge is filed first, as here, with the appropriate Pennsylvania state agency. 42 U.S.C. § 2000e-5(e)(1).

Though the requirement sounds exacting -- 300 days after the alleged unlawful employment practice occurred -- courts have grappled with cases presenting questions of precisely when a `practice' occurred. That date may be more inflexible when there is a discrete trigger event and the discrimination is overt. However, there are cases in which the plaintiff does not know he has been harmed; similarly there are cases of an ongoing, continuous violation. To accommodate these more indeterminate situations, the Supreme Court has recognized that the filing of a timely charge is`a requirement that, like a statute of limitation, is subject to waiver, estoppel, and equitable tolling.'

West v. Philadelphia Elec. Co., 45 F.3d 744, 754 (3d Cir. 1995) (citations omitted). Rush filed the requisite EEOC claim on November 1, 1993. Consequently, the 300-day retrospective limitations period which ordinarily would bar claims for earlier events began to run on January 5, 1993.

The continuing violation theory allows a "plaintiff [to] pursue a Title VII claim for discriminatory conduct that began prior to the filing period if he can demonstrate that the act is part of an ongoing practice or pattern of discrimination of the defendant." Id. at 754 (citations omitted). In considering this issue, we note that the parties in their briefs do not clearly delineate between the record on the motion for summary judgment and the record at trial. While in some cases this lack of precision could present a problem on appeal, here it does not because, on any view of the facts, Scott was entitled to a judgment on the failure to promote and train claim. Similarly, on any view of the facts, Rush's hostile environment sexual harassment claim was not time barred, even with respect to conduct occurring prior to January 5, 1993.

We also note that in some circumstances the procedure followed in deciding whether there is a continuing violation might impact on the scope of review. There is authority that

8

a trial court's ruling on whether there is a continuing violation is reviewed on the clearly erroneous standard. Calloway v. Partners Nat'l Health Plans, 986 F.2d 446, 448 (11th Cir. 1993); Abrams v. Baylor College of Med., 805 F.2d 528, 532 (5th Cir. 1986). Yet the district court ruled on the continuing violation argument by denying Scott's motion for summary judgment; this procedural posture suggests that plenary review might be appropriate. Furthermore, in West, in which we considered the employee's argument that there had been a continuing violation in the context of reviewing determinations on the admission of evidence, we suggested that we were exercising at least a degree of plenary review. West, 45 F.3d at 748 ("We conclude, in this hostile work environment context, that the scope of the admissibility of evidence of events, which preceded the 300-day period, must be grounded in the substantive law at issue."); id. at 752 ("We review the evidentiary determinations of the trial court under an abuse of discretion standard. . . . However, as to the application or interpretation of a legal standard underlying the admissibility decision, our review is plenary.") (citations omitted).

In this case, however, we need not linger on the scope of review issue because even on a deferential clearly erroneous standard of review, we would reverse with respect to the failure to promote and train claim; and even on a plenary review, we would hold that the continuing violation theory was applicable to the sexually hostile environment claim. Cf. Konstantopoulous v. Westvaco Corp., No. 94-7462, slip op. at 15 n.1 (3d Cir. May 6, 1997) ("Here, we find it unnecessary to decide which standard of review to apply because under either standard we see no ground for reversing the district court's decision."). Thus, we apply the standard of review most favorable to the party against whom we are making particular determinations.

To demonstrate a continuing violation, the plaintiff first must show that at least one discriminatory act occurred within the 300-day period. West, 45 F.3d at 754. Second, the plaintiff must show that "the harassment is `more than the occurrence of isolated or sporadic acts of intentional discrimination,' " and instead must demonstrate a

9

continuing pattern of discrimination. Id. at 755 (citation omitted). A plaintiff satisfying these requirements may present evidence and recover damages for the entire continuing violation, and the 300-day filing period will not act as a bar. Id.

We have followed Berry v. Board of Supervisors of Louisiana State Univ., 715 F.2d 971 (5th Cir. 1983), the leading case on the continuing violation theory. The Berry court enumerated several factors relevant to the determination of whether a plaintiff has demonstrated a continuing violation:

The first is subject matter. Do the alleged acts involve the same type of discrimination, tending to connect them in a continuing violation? The second is frequency. Are the alleged acts recurring. . . or more in the nature of an isolated work assignment or employment decision? The third factor, perhaps of most importance, is degree of permanence. Does the act have the degree of permanence which should trigger an employee's awareness of and duty to assert his or her rights, or which should indicate to the employee that the continued existence of the adverse consequences of the act is to be expected without being dependent on a continuing intent to discriminate?

Id. at 981 (footnote omitted); see also West, 45 F.3d at 755 n.9.

1. The Hostile Environment Sexual Harassment Claim

Scott argues that Rush should have filed her sexual harassment claim earlier than November 1, 1993, and that she therefore should not have been permitted to sue on or present evidence of sexual harassment occurring prior to the start of the 300-day limitations period. Rush responds that she was not aware in 1991 when she filed her initial EEOC complaint that she had been subjected to sexual harassment, and she also contends that the harassment she experienced constituted a continuing violation so that all of the harassment, even that occurring before January 5, 1993, was actionable.

As we explained in West, there is "a natural affinity" between the theory underlying hostile environment claims

10

and the continuing violation theory. West, 45 F.3d at 755. A sexually hostile work environment often "results from acts of sexual. . . harassment which are pervasive and continue over time, whereas isolated or single incidents of harassment are insufficient to constitute a hostile environment." Id. (citations and internal quotation marks omitted); see also Galloway v. General Motors Serv. Parts Operations, 78 F.3d 1164, 1166 (7th Cir. 1996). The Court of Appeals for the Seventh Circuit in Galloway expressed its desire to encourage plaintiffs to commence litigation when they become aware of conduct that would support a viable claim without forcing them to do so prematurely. Id. at 1166. Thus, the court concluded that a plaintiff "may not base her. . . suit on conduct that occurred outside the statute of limitations unless it would have been unreasonable to expect the plaintiff to sue before the statute ran on that conduct, as in a case in which the conduct could constitute, or be recognized, as actionable harassment only in the light of events that occurred later, within the period of the statute of limitations." Id. at 1167 (citations omitted).

Rush testified that when she filed her original EEOC complaint in 1991 she did not include claims for sexual harassment because

it was not really as frequently [sic], it later intensified but at that time it was a lot less frequent. I'm not sure I recognized it at that time. And, whereas the discrimination was more obvious to me. I also felt that at that time I was friendly with Rene, which he was the biggest problem and maybe I was not clear enough, maybe I didn't turn around and yell at him, I didn't I figured it wouldn't be fair . . . to complain.

App. at 376-77. Rush testified that at the beginning of her employment, Rene Bedoya, her co-worker and primary harasser, treated her nicely, and, although perhaps overly attentive, his behavior was not problematic. App. at 412-13. On redirect examination, Rush read into the record part of her diary where she noted that the harassment began after she filed the EEOC charge. App. at 661.

Rush also testified that she was harassed by male co-workers on a daily basis. App. at 402. This harassment

11

included disparaging remarks and criticism of her work. App. at 403-04. Rush testified that Bedoya's behavior changed and that he began to touch her inappropriately and sexually at work, to make sexual comments to her, and to be rude to her. App. at 416-19, 421. Rush also testified that her co-worker Tom Richards made inappropriate comments to her and about her. She stated that she partly overheard, and another co-worker told her, that Richards had said he "wanted to fuck [Rush] in his van, and then shoot [Rush] in the head so that no one would ever know." App. at 421-22.

The district court correctly concluded that Rush's sexual harassment claim constituted a continuing violation. She properly was permitted to sue on this continuing violation and to present evidence of incidents occurring prior to the limitations period. First, the 300-day period began to run on January 5, 1993, and it is clear that there were episodes of alleged harassment after that point, including the meeting that occurred on her last day of employment, as well as the continual comments by Bedoya and Rush's other co-workers. Second, the evidence supports a finding that Rush suffered continuous sexual harassment, at least from the time she filed the original EEOC charge. The harassment did not consist of unrelated, isolated incidents, but constituted a continuous pattern of derogatory remarks, rude behavior, and discriminatory conduct. Her failure to claim harassment in the 1991 EEOC charge does not destroy her claim, because the evidence shows that the harassment intensified after the charge was filed, and, moreover, she did not realize early on how pervasive or severe the harassment was.

2. The Failure to Promote Claim

Scott argues that Rush's failure to promote and train claim predicated on sexual discrimination was not timely filed because she did not allege any instances of discriminatory failure to promote and train after January 5, 1993.[1] Rush argues that the sex discrimination in training

---

1. Scott also argues that the settlement agreement and Rush's release prohibit her from litigating her failure to promote and train claim. Because we find the failure to promote and train claim time barred, it is not necessary to address either the effect of the release on the viability of Rush's claim or Rush's ability to repudiate the release.

12

and promotion was a continuing violation during her three and one-half years at Scott. The district court found that Rush's failure to promote and train claim was not time barred because the continuing violation theory applied to it. This finding was in error.

Neither the promotion of Garren Knoll to a Lab Tech II position nor the hiring of Mark Carpenter to perform temporarily Lab Tech II work occurred within the 300-day limitations period. In an effort to avoid a conclusion that her failure to promote and train claim was time barred, Rush argues that the gradual change in Knoll's duties from primarily computer and automation work to primarily laboratory analysis work demonstrates that although Scott actually had a need to hire additional Lab Tech II analysts, it refused to promote her.

Although Knoll's performance of analysis work greatly increased beginning in January 1993, app. at 1590, 1596, Scott's assignment of analysis work to Knoll did not constitute a discriminatory failure to promote occurring within the limitations period. Scott was not required to promote an additional person to perform the analysis work it ultimately assigned to Knoll. Knoll's promotion to the Lab Tech II position was a discrete incident; Scott filled the vacancy in June 1992. After that time, aside from the part-time summer position Carpenter filled, no new Lab Tech II positions became available. The change in Knoll's work assignment did not require that Scott demote him or create a new Lab Tech II position for Rush. Of course, her attempt to predicate her claim on Carpenter's hiring is also unavailing. Rush was required to make a timely challenge to the actual failure to consider her for promotion, and she did not do so. Therefore, she cannot claim that Scott's alleged discrimination in promotion was a continuing violation.

In a further effort to bolster her argument that her failure to promote and train claim was filed timely, Rush contends Scott's discrimination in training and discipline, as well as the sexual harassment she suffered, continued throughout her employment and can be used to establish a continuing violation that would include Scott's failure to promote her. We reject this argument.

13

Rush's failure to promote and train claim is distinct from her sexual harassment claim and cannot be regarded as having been timely by reason of her other allegations of discriminatory treatment. Rush's failure to promote and train claim addresses discrete instances of alleged discrimination that are not susceptible to a continuing violation analysis. We reiterate that Scott's promotion of Knoll and hiring of Carpenter were independent events that put Rush on notice to file a charge of discrimination. Rush knew from the settlement agreement that she was to be considered for the next available Lab Tech II position. If she believed Scott was not considering her for available positions as promised, she should have reacted at that time. Waiting to see what would happen next was pointless; the harm, if any, already was inflicted.

Additionally, neither the sexual harassment nor the other alleged discriminatory acts were related sufficiently to Rush's failure to promote and train claim to constitute a single continuing violation. The sexual harassment and failure to promote and train claims address different types of conduct. Rush's failure to promote and train claim focuses on the failure to promote Rush to, or prepare her for, a Lab Tech II analyst position. By contrast, the sexual harassment claim focuses on the use of foul language, demeaning comments, and inappropriate touching by her co-workers and some managers. These are distinct claims.

Similarly, although she has alleged disparity in discipline falling within the limitations period, these claims are not related factually to the failure to promote and train claims. While she still may have a viable and timely claim for discrimination in discipline, this claim is not sufficiently related to the failure to promote and train claim to enable us to regard the failure to promote and train claim as part of a continuing violation.

Finally, although there is a factual nexus between Rush's failure to promote and failure to train claims, which we have been considering together, treating them as separate claims does not affect our result.[2] Rush has not alleged

_____

2. The district court treated the failure to promote and failure to train claims together by submitting them to the jury in a single special interrogatory.

14

specific failure to train incidents within the limitations period. Indeed, most of the allegations supporting Rush's failure to train claim stem from Scott's failure to include her in the original flask-making class as well as her requests prior to that class for more advanced training. She also complained of Scott's failure to train her properly for the position for which she was hired. Thus, the failure to train allegations do not bring her failure to promote claim to a time within the limitations period. Moreover, a failure to train claim arising within the 300-day limitations period would be distinct from a claim predicated on Scott's earlier failures to promote Rush.

We recently have had occasion to consider a situation which demonstrates that a court must be circumspect in relating discrete incidents to each other. In Konstantopoulos v. Westvaco Corp., slip op. at 10, a plaintiff who was employed by the defendant for two distinct time periods, with a seven-month interruption between them, argued "that the district court improperly evaluated the events that occurred during her second period of employment in isolation and that instead the court should have viewed them as a continuation of the harassment that had taken place seven months earlier." We rejected the argument, in part because the seven-month gap allowed the effects of the earlier incidents to dissipate. Konstantopoulos demonstrates that a careful analysis must be made before acts are considered part of a pattern. There, the passage of time and the employee's interruption of employment destroyed the pattern. Here, there was no pattern because the failure to promote and train claim was distinct from the sexual harassment claim and the other allegations of discrimination.

The district court erred when it held that Rush's failure to promote and train claim was a continuing violation that was not time barred. The incidents relevant to the claim occurred in the spring and summer of 1992; Rush did not file her EEOC claim for almost 18 months thereafter. Her claim was time barred and cannot be saved by any of the alleged discrimination or harassment occurring within the limitations period. Furthermore, we have no intention of shredding the 300-day limitations period by automatically

15

allowing an employee who alleges actionable conduct occurring within that period to make claims with respect to any adverse employment actions that occurred during his or her entire period of employment. Rather, a district court must scrutinize the claims to establish that they are related. See West, 45 F.3d at 755 (refusing to adopt per se rule that every hostile environment claim constitutes a continuing violation). To allow a stale claim to proceed would be inconsistent with the administrative procedure established by Title VII which contemplates prompt filing of charges so that discrimination controversies may be resolved promptly. See EEOC v. University of Pennsylvania, 850 F.2d 969, 978 (3d Cir. 1988) ("Upholding the University's first-filed suit in this context would undermine the congressional policy favoring prompt resolution of discrimination claims."), aff'd on other grounds, 493 U.S. 182, 110 S.Ct. 577 (1990). Accordingly, we will reverse the judgment in favor of Rush on the failure to promote and train claim and remand for the district court to enter judgment in favor of Scott on that claim.

3. Other Claims

The jury answered special interrogatories, rendering separate liability verdicts on each of Rush's claims. App. at 219-20. Similarly, the court instructed the jury to calculate damages separately for each category of damages claimed. App. at 220-21. However, the court did not instruct the jury to attribute specific portions of the damages awards to the individual counts on which it found Scott liable. Our review of the record compels the conclusion that the presence of the failure to promote and train claim and the introduction of evidence related to and supporting that claim infected the jury's liability verdicts on the sexual harassment and constructive discharge claims as well as the verdict for the damages.

Indeed, Rush has claimed that the sexual harassment and Scott's failure to promote and train her were related. She testified that she believed the harassment was part of her co-workers' and management's plan to force her out of the lab. App. at 420, 496. Rush reiterated this theory at oral argument, contending that the same managerial personnel, particularly Sirinides, who failed to stop the

16

sexual harassment were also responsible for Scott's failure to promote her. At trial, witnesses testified about both the alleged failure to promote and train and the alleged harassment, and the evidence supporting the claims was presented in tandem.

It is not possible to ascertain what portions of the compensatory and punitive damages awards were attributable to the time-barred failure to promote and train claim, so we must reverse the damages awards. Furthermore, given Rush's theory of the case and the manner in which evidence was presented, we are unable to find that the evidence of discriminatory failure to promote and train did not affect the jury's verdict on liability on the sexual harassment hostile environment claim. At a minimum, the evidence of Scott's failure to promote and train Rush was highly prejudicial to Scott on the harassment claim. We therefore will reverse the jury's liability verdict on the hostile environment sexual harassment claim as well. Similarly, Rush's constructive discharge claim was not linked exclusively to either the failure to promote and train claim or the harassment claim, so the verdict on this claim, too, may have been influenced by the evidence offered in support of the failure to promote and train claim. Accordingly, we also will reverse the judgment in favor of Rush on her constructive discharge claim.

The jury found in favor of Scott on Rush's retaliation claim. Rush has not filed a cross-appeal from the entry of judgment in favor of Scott on that claim, so the judgment on the retaliation claim will stand. See, e.g., Abrams v. Lightolier Inc., 50 F.3d 1204, 1213 (3d Cir. 1995) ("While we note that the instructions as to the ADEA claim may have required Abrams to demonstrate more than he was required to under the appropriate standard, Abrams has not cross-appealed on that ground and we therefore leave the judgment undisturbed as to the ADEA claim."); Winston v. Children and Youth Servs., 948 F.2d 1380, 1385 (3d Cir. 1991) (declining to consider issue appellees failed to raise in cross-appeal or mention in brief). Finally, as we already have indicated, the Equal Pay Act and common law claims are out of the case, and Rush has not appealed from their dismissal.

17

B. Punitive Damages

Scott argues that punitive damages are not available under the PHRA as a matter of law. Although this question might arise again at the retrial, we decline to address it at this juncture.

"In adjudicating a case under state law, we are not free to impose our own view of what state law should be; rather, we are to apply state law as interpreted by the state's highest court in an effort to predict how that court would decide the precise legal issues before us. . . . In the absence of guidance from the state's highest court, we are to consider decisions of the state's intermediate appellate courts for assistance in predicting how the state's highest court would rule." Gares v. Willingboro Township, 90 F.3d 720, 725 (3d Cir. 1996) (citations omitted). Predicting the Pennsylvania Supreme Court's likely adjudication of the question presented is complicated by a sparse landscape of conflicting intermediate appellate case law.

The Pennsylvania Supreme Court has not decided whether punitive damages are available under the PHRA, although it has indirectly confronted the question of the available remedies under the PHRA. Pennsylvania Human Relations Comm'n v. Zamantakis, 387 A.2d 70, 71-73 (Pa. 1978) (PHRC is not authorized to "award damages for mental anguish and humiliation which may arise as a result of unlawful discrimination," but courts possess authority to make such awards under their power to grant legal and equitable relief).3 One intermediate appellate court in Pennsylvania has held that punitive damages are available under the PHRA. Brown Transp. Corp. v. Pennsylvania Human Relations Comm'n, 578 A.2d 555, 562 (Pa. Commw. Ct. 1990) (no bar to punitive or compensatory damages in PHRA).4 However, during the pendency of this

_____

3. Zamantakis was a plurality opinion with limited binding effect. Hoy v. Angelone, ___ A.2d ___, 1997 WL 119445, at *6 (Pa. Super. Ct. 1997).

4. District courts in the Eastern District of Pennsylvania consistently have held that punitive damages are available under the PHRA. Smith v. General Elec. Co., 1996 WL 24762, at *6 (E.D. Pa. 1996); Galeone v. American Packaging Corp., 764 F. Supp. 349, 351 (E.D. Pa. 1991) ("Since September 1990. . . most federal courts examining this issue have allowed punitive damage claims to remain in PHRA actions after predicting that the Pennsylvania Supreme Court would rule that punitive damages may be imposed under the PHRA.") (collecting cases).

18

appeal, a panel of the Pennsylvania Superior Court vacated an award of punitive damages under the PHRA. Hoy v. Angelone, ___ A.2d ___, 1997 WL 119445, *6 (Pa. Super. Ct. 1997). The Hoy court specifically refused to extend Zamantakis, noting that damages for humiliation and mental anguish are of a different nature and serve different purposes than punitive damages, and explained it was "unpersuaded that such damages are recoverable under the PHRA and. . . reluctant to allow such recovery in the absence of more definitive guidance" from the state Supreme Court. Id.

At oral argument, counsel for Rush represented that a petition to the Pennsylvania Supreme Court for allocatur has been filed in Hoy. It is therefore possible that the Pennsylvania Supreme Court soon will address the question of the availability of punitive damages under the PHRA. Given these circumstances, we are hesitant to consider the question, for to do so might produce the undesirable result of having the PHRA remedies available to a plaintiff differ depending upon the forum in which the plaintiff has sued. For these reasons, and because it is unnecessary to the disposition of this appeal, we decline to decide whether punitive damages are available under the PHRA.

IV. CONCLUSION

Rush's sexual harassment claim was filed timely, and she has presented evidence justifying a conclusion that there was a continuing violation extending from prior to until after January 5, 1993. Thus, on remand, she should be permitted to introduce evidence of sexual harassment occurring throughout her tenure at Scott. However, her sex discrimination claim based on Scott's failure to promote and train her was time barred. The inclusion of the failure to promote and train claim and the evidence supporting it infected the entire verdict, so a remand for retrial is necessary on Rush's sexual harassment and constructive discharge claims. Accordingly, we will reverse the judgment entered in favor of Rush on the basis of the remittitur and will remand the case to the district court for entry of judgment in favor of Scott on the failure to promote and train claim and for a new trial on the hostile environment

19

based on sexual harassment and constructive discharge claims. We do not disturb the disposition made in the district court of Rush's other claims.

A True Copy:
Teste:

<u>Clerk of the United States Court of Appeals</u>
<u>for the Third Circuit</u>

20