

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-1-2002

# DeVito v. Bd Ed Cty Newark

Precedential or Non-Precedential:

Docket 1-2047

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"DeVito v. Bd Ed Cty Newark" (2002). *2002 Decisions.* Paper 143.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/143

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 01-2047


PETER DEVITO,

Appellant

v.

BOARD OF EDUCATION OF THE
CITY OF NEWARK


Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 99-cv-05558)
District Judge: Honorable John W. Bissell


Submitted Under Third Circuit LAR 34.1(a)
February 5, 2002

Before: SLOVITER, and AMBRO, Circuit Judges
POLLAK*, District Judge

(Opinion filed March 1, 2002)


OPINION


*Honorable Louis H. Pollak, United States District Judge for the
Eastern District
of Pennsylvania, sitting by designation.

AMBRO, Circuit Judge:

On July 2, 1999, Peter DeVito ("DeVito") filed a complaint alleging
racially and
politically motivated discrimination by his employer, the Board of
Education of the City
of Newark (the "Board"), in violation of the New Jersey Law Against
Discrimination
("NJLAD"), 42 U.S.C.  1983, and the New Jersey and United States
Constitutions.  In its

March 26, 2001 judgment and order, the United States District Court for the District of
New Jersey granted summary judgment in favor of the Board and dismissed DeVito's
complaint with prejudice.  We now affirm.

                                    I.
     The District Court had jurisdiction under 28 U.S.C.    1331, 1343, and 1367.  We
exercise appellate jurisdiction pursuant to 28 U.S.C.    1291, and the applicable standard
of review is plenary.  Saldana v. Kmart Corp., 260 F.3d 228, 231-32 (3d Cir. 2001).
Summary judgment is appropriate if there are no genuine issues of material fact and the
Board is entitled to judgment as a matter of law.  Id.  We must view all facts and draw all
reasonable inferences in DeVito's favor.  Id.  However, DeVito may not rely on the
allegations in his pleadings; instead, through "more than a scintilla" of evidence, he must
present "specific facts showing that there is a genuine issue for trial." Id.; see Fed. R.
Civ. P. 56.


                                    II.
     Because we write exclusively for the parties, a full recitation of the facts is
unnecessary.  DeVito, a Caucasian male, alleges that the Board committed a series of
discriminatory employment acts in violation of the NJLAD.

1.   In June 1990, the Board demoted him from the position of
     Coordinator of Maintenance Services to electrician.

2.   In 1991, he applied for the position of Assistant Director of Repair
     and Maintenance and was denied the job.

3.   In 1993-1994, he applied for, and was denied, the same position.

4.   In April 1995, the Board created the position of Director of Repair
     and Maintenance and established hiring criteria that only one person
     could fulfill.

5.   In January 1996, the Board created the positions of Acting Assistant
     Director of Maintenance Services for Administration and Acting
     Associate Director of Maintenance Services for Operations.
     According to DeVito, the Board created these positions to promote
     favored employees.  DeVito did not apply for either position.

6.   In March or April 1997, DeVito was reassigned from the electrical
     shop to the field.

7. In 1999, the Board posted the positions of Building Manager and Engineer in Charge, although DeVito did not apply for either.
8. In May 1999, DeVito was reassigned to the night shift. Despite his requests, the Board did not return him to the day shift.

The District Court ruled that DeVito's NJLAD claim is time-barred with respect to the majority of these acts. A two-year statute of limitations applies to an NJLAD claim in which the operative facts arose after July 27, 1993, while a six-year statute of limitations applies if the events occurred before this date. Cardenas v. Massey, 269 F.3d 251, 255 (3d Cir. 2001) (citing Montells v. Haynes, 627 A.2d 654 (N.J. 1993)).

Although the District Court properly held that the claim survives to the extent it relies on acts Seven and Eight, it erred in holding that act Three satisfies the statute of limitations. DeVito alleges that in 1993 he applied for, and was denied, the position of Assistant Director. Nevertheless, the record reflects two specific dates that we could consider in determining the timeliness of the allegation. On June 30, 1993, Joseph Richardson resigned from this position. See PA174. At the same time, DeVito's deposition testimony suggests that Richardson's replacement, Vincent Lupiano, began serving as Assistant Director sometime between April and December 1994. See PA80; PA91. DeVito claims that the Board discriminated against him by placing Lupiano in this position in violation of the applicable Eligibility List. See PA158.

Regardless which time period is considered determinative, the statute of limitations would bar DeVito's claim based on this employment decision. If we consider June 30, 1993 as the date of the alleged discriminatory act, a six-year statute of limitations, expiring on June 30, 1999, would apply; in contrast, if we rely on the April to December 1994 time range, a two-year statute of limitations, expiring in 1996, would apply. Under either scenario, DeVito's NJLAD claim, filed July 2, 1999, would fail to satisfy the time bar to the extent it relies on the allegedly discriminatory hiring of Lupiano.

Despite this slight error, the District Court correctly held the "continuing violation" theory for equitable tolling inapplicable under the facts presented. We apply three factors

in determining whether a series of alleged discriminatory acts constitute a continuing violation: (1) whether the acts involve the same type of discrimination; (2) whether the acts are "recurring . . . or more in the nature of an isolated work assignment or employment decision;" and (3) whether each act has a "degree of permanence which should trigger an employee's awareness of and duty to assert his or her rights."  Rush v. Scott Specialty Gases, Inc., 113 F.3d 476, 480 (3d Cir. 1997).  In evaluating the third and most important factor, the District Court properly held that each alleged act of employment discrimination had a degree of permanence which, at the time of its occurrence, should have triggered DeVito's awareness of a possible violation of his rights. Id. at 483 ("Rush's failure to promote and train claim addresses discrete instances of alleged discrimination that are not susceptible to a continuing violation analysis.").  This holding is buttressed by the fact that these acts actually did trigger such awareness, as evidenced by DeVito's 1995 complaint that alleged a NJLAD claim based on the employment decisions involved in this case.

III.

To the extent it relies on employment decisions that do satisfy the statute of limitations, DeVito's NJLAD claim cannot survive summary judgment. Establishing a discrimination claim under this statute involves the well-recognized burden shifting analysis established in  McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  See Erickson v. Marsh & McLennan Co., 569 A.2d 793, 798 (N.J. 1990).  However, the prima facie stage is slightly modified in a reverse discrimination context where, as here, the plaintiff is part of a majority group.  Accordingly, DeVito must present "background circumstances" suggesting that the Board is "the unusual employer who discriminates against the majority."  Id. at 799.

The District Court held that DeVito failed to produce evidence of those "background circumstances," and we agree.  In support of his various allegations of discrimination, DeVito's only evidence is that the individuals who allegedly granted or received preferential employment treatment were African-American.  Without more, such

evidence is insufficient.  See id. at 800 (pointing to the minority status of favored employees, without more, is insufficient evidence of "background circumstances"); see also Iadimarco v. Runyon, 190 F.3d 151, 156 (3d Cir. 1999) ("[T]he race of the selecting officials is not a sufficient circumstance to establish a prima facie case of discrimination by itself.").

                                    IV.

DeVito's complaint also alleges that the Board engaged in political retaliation against him in violation of  1983.  The District Court properly rejected this claim as well.  The Board cannot be held vicariously liable under  1983.  Monell v. New York City Dep't of Social Services, 436 U.S. 658, 694 (1978).  Instead, liability only arises if the Board adopted a policy, custom, or practice that resulted in DeVito's constitutional injury.  Id.; see Kneipp v. Tedder, 95 F.3d 1199, 1212 (3d Cir. 1996) (defining what action constitutes a policy or custom).  DeVito failed to produce any evidence establishing such a policy, custom, or practice, and thus, summary judgment in the Board's favor is appropriate.

                            *   *   *   *   *

For the foregoing reasons, we affirm the District Court's grant of summary

judgment.

TO THE CLERK:

Please file the foregoing Opinion.

                              By the Court,


                              /s/ Thomas L. Ambro
                                          Circuit Judge