· **Dolores ROGAN, Plaintiff,**

v.

**GIANT EAGLE, INC., Defendant.**

**No. Civ.A. 99–343ERIE.**

. United States District Court,
W.D. Pennsylvania.

Sept. 21, 2000.

---

Kenneth W. Wargo, Quinn, Buseck, Leemhuis, Toohey & Kroto, Inc., Erie, PA, for plaintiff.

Susan Gromis Flynn, Marcus & Shapira, Pittsburgh, PA, for defendant.

## MEMORANDUM OPINION

COHILL, Senior District Judge.

Plaintiff Dolores Rogan filed this action against her employer, defendant Giant Eagle, Inc. ("Giant Eagle"), alleging that the company failed to promote her in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 1201, *et seq.* and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951, *et seq.* Giant Eagle has filed a motion to dismiss her claims pursuant to Fed.R.Civ.P. 12(b)(6), for failure to file a charge with the Equal Employment Opportunity Commission ("EEOC") within the prescribed 300 day statute of limitations. (Doc. 5). Plaintiff has filed a brief in opposition, to which the defendant has replied. For the reasons set forth below, we will grant defendant's motion and dismiss the complaint.

## Factual Background

Dolores Rogan suffered a work-related injury in the fall of 1991, while employed as a meat wrapper by defendant Giant Eagle at its West 26th and Peninsula store in Erie, Pennsylvania. She went through several cycles of being off work, returning to modified light-duty work, and then resuming full-time full-duty work. The injury ultimately required a series of surgeries, after which Ms. Rogan returned to work on December 1, 1996, as a part time meat sampler/demonstrator, working approximately 16 to 22 hours a week. According to the complaint, the injury left her with physical limitations which either substantially limited one or more of her major life activities or caused others to regard her as having an impairment.

In February of 1997, Ms. Rogan saw a posting for a full time meat wrapping position, and applied for the job. Another individual, allegedly with less seniority and with no known disability, got the position. Plaintiff queried both her union and the store's management as to why she was not hired. A letter from the Director of Employee and Labor Relations dated October 6, 1997, informed her that she had not been given the job because she was unable to perform the duties required due to medical limitations.

Plaintiff further avers that after she asked why she hadn't been hired, the defendant engaged in a pattern of harassment and retaliation against her, including attempts to publicly humiliate her and assigning her to undesirable jobs and working hours.

Ms. Rogan filed a charge with the Equal Employment Opportunity Commission and received a dismissal and right to sue letter. She filed this action on October 21, 1999.

## Motion to Dismiss Standard

■ A motion to dismiss tests the legal sufficiency of the complaint. The averments must be viewed in the light most favorable to the plaintiff, and all well-pleaded allegations of the complaint must be accepted as true. *Neitzke v. Williams,* 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). A complaint may be dismissed only where no relief could be granted under any set of facts that could be proved consistent with the allegations. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). The statute of limitations may be the basis of a motion to dismiss, provided the complaint on its face shows noncompliance with the applicable limitations period and the affirmative defense clearly appears on the face of the pleading. *Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1385 n. 1 (3d Cir.1994); 5A C. Wright & A. Miller, Federal Practice and Procedure § 1357, at 299 (2d ed.1993).

■ In deciding a motion to dismiss, courts generally consider only the allegations contained in the complaint, any exhibits attached to the complaint, and matters of public record. *Oshiver,* 38 F.3d at 1384, n. 2; *Pension Benefit Guaranty Corp. v. White,* 998 F.2d 1192, 1196 (3d Cir.1993); 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357, at 299 (2d ed.1993). However, a plaintiff's failure to attach or cite docu-

ments explicitly relied on or integral to the complaint does not preclude the court, when considering a motion to dismiss, from reviewing the text of these extrinsic documents. *Rowe v. Morgan Stanley Dean Witter,* 191 F.R.D. 398 (D.N.J.1999). Courts may consider a document that a defendant attaches as an exhibit to a motion to dismiss, provided that its authenticity is undisputed and that plaintiff's claims are based on the document. *Pension Benefit,* 998 F.2d at 1196 (citing *Cortec Indus., Inc. v. Sum Holding, L.P.,* 949 F.2d 42, 48 (2d Cir.1991)), *cert. denied,* 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992). Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied. 998 F.2d at 1196. This does not undermine the general rule that where a court considers extrinsic evidence in deciding a motion to dismiss, the motion is converted to one for summary judgment and the parties must be afforded an opportunity to conduct discovery. *Rose v. Bartle,* 871 F.2d 331, 343 (3d Cir.1989). The exception to the rule is premised on the theory that when a complaint relies on a document, the plaintiff is clearly on notice as to its contents and the need for an opportunity to refute the evidence is diminished. *Pension Benefit,* 998 F.2d at 1196–97.

## Discussion

### A.

Before addressing the merits of defendant's motion, we must determine which, if any, of the extrinsic documents provided by both parties we may properly consider in deciding this motion to dismiss.

Defendant has filed the following documents with its motion: plaintiff's handwritten union grievance (Def.'s Ex. A); plaintiff's EEOC charge (Def.'s Ex. B); a letter from defendant's counsel to the EEOC dated July 22, 1998 (Def.'s Ex. C); a letter from the EEOC to Ms. Rogan summarizing the evidence obtained in its investigation of her charges (Def.'s Ex. D–1); the

EEOC dismissal and notice of rights form (right to sue letter) (Def.'s Ex. D–2); a letter from defendant's counsel to the EEOC dated December 18, 1998 (Def.'s Ex. E); and a letter from plaintiff's counsel to the EEOC dated June 15, 1998 (Def.'s Ex. F).

Plaintiff's response in opposition to the motion to dismiss includes an affidavit with the following attached exhibits: the ADA intake questionnaire dated April 3, 1998 (Pl.'s Ex. A); the affidavit she filed with the EEOC charge on June 9, 1998 (Pl.'s Ex. B); and a letter from Dale Giovegno from Giant Eagle to the plaintiff dated October 6, 1997 (Pl.'s Ex. C).

Perhaps the broadest standard for what documents a court may consider without converting a 12(b)(6) motion to one for summary judgment, was articulated by the court in *Arizmendi v. Lawson,* 914 F.Supp. 1157 (E.D.Pa.1996). Writing in the context of whether employment discrimination claims based on race, sex, pregnancy, and national origin should be dismissed as time-barred, the court found that:

> a court may properly look beyond the complaint to matters of public record including court files, records and letters of official actions or decisions of government agencies and administrative bodies, documents referenced and incorporated in the complaint and documents referenced in the complaint or essential to a plaintiff's claim which are attached to a defendant's motion.

*Arizmendi,* 914 F.Supp. at 1161 (citing *Henson v. CSC Credit Services,* 29 F.3d 280, 284 (7th Cir.1994); *Pension Benefit,* 998 F.2d 1192, 1196–97 (3d Cir.1993), *cert. denied,* 510 U.S. 1042, 114 S.Ct. 687, 126 L.Ed.2d 655 (1994); *Kramer v. Time Warner, Inc.,* 937 F.2d 767, 774 (2d Cir.1991); *Mack v. South Bay Beer Distributors, Inc.,* 798 F.2d 1279, 1282 (9th Cir.1986)).

In making its decision, the *Arizmendi* court took cognizance of the final agency decision and right to sue letter, finding

them essential to the plaintiff's claim. "Nowhere in the pertinent jurisprudence is it suggested that a discrimination plaintiff may sustain a court claim without showing resort to the avenue of administrative relief and if untimely, an equitable reason therefor." *Id.* at 1161. *See also Gallo v. Board of Regents,* 916 F.Supp. 1005 (S.D.Cal.1995) (stating that it could consider both EEOC right to sue letter and charge either as referenced in the complaint or as public records subject to judicial notice); *accord Maldonado–Cordero v. At & T,* 73 F.Supp.2d 177 (D.P.R.1999); *Shannon v. City of Philadelphia,* 1999 WL 126097 (E.D.Pa. March 5, 1999).

Since *Arizmendi,* numerous decisions from this jurisdiction have similarly found that a court may consider an undisputedly authentic document attached to a defendant's motion to dismiss, provided that the plaintiff's claims are based on the document, along with matters of public record, without converting the motion to one for summary judgment and requiring the opportunity for discovery required under *Rose v. Bartle,* 871 F.2d 331 (3d Cir.1989). *See, e.g. Steinhardt Group Inc. v. Citicorp,* 126 F.3d 144 (3d Cir.1997); *Beverly Enterprises, Inc. v. Trump,* 182 F.3d 183 (3d Cir.1999); *Bryan v. Acorn Hotel, Inc.,* 931 F.Supp. 394 (E.D.Pa.1996); *Breyer v. Meissner,* 23 F.Supp.2d 540 (E.D.Pa.1998).

Plaintiff argues strenuously that we may not consider **any** of the proffered documents, without converting the instant motion to one for summary judgment and providing time for discovery. She cites *Flint v. City of Philadelphia,* 1998 WL 480849 (E.D.Pa. August 12, 1998) in support of this contention. In *Flint,* the court addressed a motion to dismiss an employment discrimination complaint for failure to file an EEOC charge within the required time period. The parties submitted a number of documents,[1] but the court declined to consider any of them, stating

that to do so would require converting the motion to dismiss to one for summary judgment. *Id.* at *1–2. It appears to us that the district court appropriately excluded these documents, since they were neither mentioned in the complaint nor relied upon in the plaintiff's claims. We also find *Flint* distinguishable in that the submissions made to that court did not include the EEOC charge or related documents from the agency. The district court in that case already had the crucial factual information it needed to resolve the question of timely filing, which is the date the plaintiff filed her charge of discrimination with the EEOC. *Id.* at *1. The complaint before us does not provide that information.

■ It is clear to us that under the applicable legal standard we may consider the EEOC charge and related EEOC documents, including the letter from the EEOC summarizing its investigation, the right to sue letter, and the intake questionnaire, either as undisputed documents referenced in the complaint or central to the plaintiff's claim, or as information which is a matter of public record, without converting this motion to one summary judgment.

■ With regard to Ms. Rogan's intake questionnaire, we are in agreement with those courts which have determined that a questionnaire may constitute official charges for statutory filing purposes. *Peterson v. City of Wichita,* 888 F.2d 1307, 1309 (10th Cir.) *cert. denied,* 495 U.S. 932, 110 S.Ct. 2173, 109 L.Ed.2d 502 (1990); *Casavantes v. California State Univ.,* 732 F.2d 1441, 1443 (9th Cir.1984); *EEOC v. Sears, Roebuck & Co.,* 650 F.2d 14, 18 (2d Cir.1981); *Price v. Southwestern Bell Tel.,* 687 F.2d 74, 78 (5th Cir.1982); *Getz v. Commonwealth of Pennsylvania Blindness and Visual Services,* 1999 WL 768303 (E.D.Pa. Sept.29, 1999); *Kuper v. Colonial Penn Insurance Co.,* 1999 WL 317077 *3, n. 4 (E.D.Pa. May 18, 1999). Using the

---

1. "The defendant submitted documents related to the posting, Flint's responses, the arbitrator's decision, and all of the government's appeals. In her response, Flint submitted an affidavit, as well as two letters to the EEOC." *Id.* at *1.

intake questionnaire to show timeliness is in keeping with the prevailing view that "procedural technicalities should not be used to prevent Title VII claims from being decided on the merits." *Revis v. Slocomb Indus., Inc.* 814 F.Supp. 1209, 1215 (D.Del.1993) (quoting *Gooding v. Warner–Lambert Co.*, 744 F.2d 354, 358–59 (3d Cir.1984)).

We may also consider the letter dated October 6, 1997, since it is referenced at ¶ 20 of plaintiff's complaint.

The remaining submissions are neither referenced in the complaint nor essential to the plaintiff's claims, and we will not consider them here.

We now turn to the substance of defendant's motion to dismiss.

### B. Statute of Limitations

Giant Eagle has moved to dismiss the complaint on the grounds that Ms. Rogan failed to file her charge of discrimination with the EEOC and/or the PHRC in a timely manner. The PHRA requires that the plaintiff file a complaint within 180 days after the alleged discriminatory act. The ADA adopts the enforcement provisions set forth in Title VII of the Civil Rights Act, 42 U.S.C. § 2000e–2003–17. Under the statute, a plaintiff seeking relief under the ADA must exhaust administrative remedies by filing a timely charge with the EEOC before commencing an action in district court. In a dual filing jurisdiction such as Pennsylvania, if a plaintiff files a complaint with a state or local agency with authority over the claim, she is allowed 300 days from the date of the alleged discrimination within which to file a charge of employment discrimination with the EEOC. 42 U.S.C. § 2000e–5(e). This 300 day statute of limitations applies to Ms. Rogan's claims.

The crux of Giant Eagle's argument is that the alleged discriminatory act occurred on March 4, 1997, when plaintiff was advised that she did not get the full time meat wrapper position.[2] Since the plaintiff did not file her EEOC charge until June 9, 1998, 455 days later, the charge was not timely filed within the 300 day limitations period. Even using the date of the intake questionnaire, April 3, 1998, as the date the charge was filed, as plaintiff argues we should do, does not bring the filing date within the timeframe established under the statute.

We agree with the defendant that the alleged discriminatory act was Giant Eagle's failure to promote Ms. Rogan, and that she learned that she had not been promoted on or about March 4, 1997. Paragraph 24 of the complaint asserts that "[t]he action of the Defendant in refusing to assign Plaintiff to the meat wrapper position and in engaging in harassment and retaliation constitute unlawful discrimination in violation of 42 U.S.C. § 12112(a)." The EEOC charge also establishes that the harm complained of is the failure to promote plaintiff to the position: "I believe that the respondent discriminated against me because of my disability in violation of the Americans with Disabilities Act of 1990, in that, the respondent placed Jen Kenna in the position." (Def.'s Ex. B). Ms. Rogan learned that Ms. Kenna had been given the job on March 4, 1997.[3]

However, to the extent that her emphasis upon the October 6, 1997 letter as the date on which she knew that she had not been promoted, in part, because Giant Eagle believed she was not physically able to do the job, suggests that her cause of action did not accrue until that date, that argument must fail. Under the discovery rule, a claim accrues when a plaintiff knows or should have known of an actual injury, as opposed to a legal injury. Even if Ms. Rogan didn't know that

---

**2.** Although the complaint does not establish a specific date when she was not awarded the position, in her EEOC charge Ms. Rogan states that "[i]n and around February or March, 1997, I was not promoted to a full time meat wrapping position" and plaintiff does not dispute this date in her brief. EEOC Charge, Def.'s Ex. B at ¶ 1; Pl.'s Br. in Opp'n at 9, 11.

**3.** Plaintiff does not explicitly assert the discovery rule in defense of her untimely charge.

Therefore it is clear from the relevant filing dates that the charge was not filed within the 300 day limitations period. However, Ms. Rogan asserts that March 4, 1997 is not significant as the starting point from which the 300 days must be measured, because the complaint alleges a continuing violation of her rights which precludes a finding that her claims are untimely.

## B. Continuing Violation Theory

 Under the continuing violation theory a plaintiff may pursue a time-barred claim for discriminatory conduct if she can show that the act is part of an "ongoing practice or pattern of discrimination" by the defendant. *Rush v. Scott Specialty Gases, Inc.,* 113 F.3d 476, 480–81 (3d Cir.1997) (citing *West v. Philadelphia Elec. Co.,* 45 F.3d 744, 754 (3d Cir.1995)). To assert a claim under this theory, a plaintiff must show that: (1) at least one discriminatory act occurred within the filing period; and (2) the harassment was more than isolated or sporadic acts of intentional discrimination, as opposed to a persistent, ongoing pattern. *West,* 45 F.3d at 754–55. Once a plaintiff has alleged facts to support a continuing violation claim, the theory tolls the statute of limitations and the 300 day filing period becomes irrelevant. *Id.* at 754–55.

Ms. Rogan contends that Giant Eagle's failure to promote her to the meat wrapper position was a discriminatory act within the 300 days. She further argues that the harassing workplace conduct complained of at ¶¶ 23 and 24 of the complaint, constitutes the persistent, ongoing pattern of conduct required to show a continuing violation. The allegations in the complaint establish the first element, since a failure to promote an employee because of a disability is a discriminatory act under the ADA, and that conduct occurred during the statutory period.

the failure to promote her could be a cognizable legal wrong under the ADA until the letter of October 6, 1997, that would be irrelevant

The Third Circuit has adopted a non-exhaustive set of factors to guide a court deciding whether a plaintiff has shown a continuing pattern of discrimination so as to satisfy the second prong of the analysis:

The first is subject matter. Do the alleged acts involve the same type of discrimination, tending to connect them to a continuing violation? The second is frequency. Are the alleged acts recurring ∴.. or more in the nature of an isolated work assignment or employment decision? The third factor, perhaps of most importance, is the degree of permanence. Does the act have the degree of permanence which should trigger an employee's awareness of and duty to assert his or her rights, or which should indicate to the employee that the continued existence of the adverse consequences of the act is to be expected without being dependent on a continuing intent to discriminate?

*Rush,* 113 F.3d at 482 (quoting *Berry v. Board of Supervisors of Louisiana State Univ.,* 715 F.2d 971, 981 (5th Cir.1983)).

The Third Circuit has cautioned that district courts deciding whether a plaintiffs claims involve the same type of discrimination must carefully scrutinize those claims to determine that they are sufficiently related so as to establish a continuing violation. *Rush,* 113 F.3d at 485.

Most frequently, a continuing violation is ascertained in one of two types of cases. The theory is frequently asserted to challenge a facially discriminatory employment policy or practice. *See, e.g. Lorance v. At & T Technologies, Inc.,* 490 U.S. 900, 912 n. 5, 109 S.Ct. 2261, 104 L.Ed.2d 961 (continuing violation theory applies to polices that are facially discriminatory); *Courtney v. LaSalle Univ.,* 124 F.3d 499, 506 (3d Cir.1997) (continuing violation theory requires proof of the existence of a discriminatory policy and its application to plaintiff); *EEOC v. Westinghouse,* 725 F.2d 211

to the accrual of her cause of action. *Oshiver,* 38 F.3d at 1391, n. 9.

(3d Cir.1983) (applying continuing violation theory to an allegedly age-discriminatory employment policy which had been repeatedly applied); *Bronze Shields, Inc. v. New Jersey Dept. of Civil Service*, 667 F.2d 1074 (3d Cir.1981), *cert. denied* 458 U.S. 1122, 102 S.Ct. 3510, 73 L.Ed.2d 1384 (1982) (refusing to apply continuing violation theory where complaint alleged that employer continued to use discriminatory eligibility lists but failed to allege specific instances of discrimination resulting from that use).

Courts also use the continuing violation theory to rescue untimely claims alleging a hostile work environment, in situations where the discriminatory conduct is pervasive and continues over time. *See, e.g. West*, 45 F.3d at 755; *Rush*, 113 F.3d at 483–84. The rationale behind finding that a hostile work environment states a continuous violation, is that an employee who works in such conditions may not initially realize that an unlawful employment practice has occurred; only when a pattern of incidents emerges' over time may it become clear that the earlier practices were not isolated or sporadic. *Id.* at 754–55.

The inquiry underlying the continuing violation construct is whether the plaintiff should have asserted her rights and filed with the EEOC within the 300 days, or whether circumstances were such that she could not know that the conduct complained of would continue. Thus, the theory is seldom applicable where the discriminatory act is a failure to hire, promote, or train. Such employment decisions are generally discrete incidents and are distinct from any subsequent allegations of workplace harassment. *See, e.g. Rush*, 113 F.3d 476 (rejecting continuing violation theory because failure to promote is a discrete incident and separate from harassment allegations); *Kepple v. GPU, Inc.*, 2 F.Supp.2d 730, 743 (W.D.Pa.1998) (rejecting continuing violation theory because demotion was a discrete incident); *Narin v. Lower Merion Sch. Dist.*, 24 F.Supp.2d 465, 473 (E.D.Pa.1998) (stating that defendant's refusal to hire on ten different occasions was not a continuing violation because each act was a "separate and distinct employment decision" and should have triggered plaintiff's awareness); *Miller v. Cohen*, 52 F.Supp.2d 389, 400 (M.D.Pa.1998) (finding failure to promote sufficiently permanent to trigger plaintiff's awareness of her rights); *Hopson v. Dollar Bank*, 994 F.Supp. 332, 337 (W.D.Pa.1997) (continuing violation theory inapplicable where failure to promote was permanent and discriminatory acts were infrequent). *But see Miller v. Beneficial Management Corp.*, 977 F.2d 834, 844 (3d Cir.1992) (holding that repeated failure to promote, where promotion is not based on specific vacancies, may constitute a continuing violation).

### i. Failure to promote

■ It is clear to this Court that insofar as Ms. Rogan asserts a continuing violation that encompasses her failure to promote claim, she has failed. The claim that Giant Eagle did not promote her to the position of meat wrapper, and the claim that her co-workers and supervisors harassed her after she complained, represent distinct and separate types of allegedly discriminatory behavior. Furthermore, the plaintiff applied for and did not get one specific position. She learned that she did not get that job in March of 1997, and that should have triggered her awareness of and duty to assert her rights.

### ii. Retaliation

Plaintiff's brief opposing dismissal makes a second attempt to bring her claims within the framework of a continuing violation and thus remove them from the statutory bar. She asserts that she has alleged a cognizable claim for harassment or retaliation alone as a continuing violation.

Paragraph 23 of the complaint alleges: 23. Additionally, after Plaintiff began questioning the Defendant's failure to assign her to the meat wrapper position,

Defendant, through its agent and employees, began engaging in a pattern of harassment and retaliation against Plaintiff for her attempt to exercise her legal rights including rights under the Americans with Disabilities Act. The conduct of the Defendant and its agents and employees included, among other things, attempts to publicly humiliate Plaintiff in front of customers and co-employees, and assigning Plaintiff to undesirable jobs and working hours.

Compl. at ¶ 23.

This averment certainly alleges retaliatory behavior which began during the filing period, and we cannot say that the allegation does not meet the *Rush* criteria so as to withstand a motion to dismiss. The alleged acts may involve similar types of recurring behavior, and they do not appear to be part of a permanent policy that should already have triggered the plaintiff's knowledge of her rights. *Rush*, 113 F.3d at 482. As far as the allegations in the complaint itself go, plaintiff has alleged a claim for retaliation as a continuing violation.

Giant Eagle correctly points out, however, that the charge Ms. Rogan filed with the EEOC is devoid of any claims that the defendant engaged in harassing or retaliatory behavior. Therefore, defendant argues, we must dismiss any claims of retaliation or harassment for failure to exhaust administrative remedies, since the EEOC clearly never considered these claims and this is a condition precedent to filing a civil action.

Were we to consider only the plaintiff's complaint and the EEOC charge, we would be constrained to dismiss these claims for failure to exhaust administrative remedies, since the EEOC charge alleges discrimination solely on the grounds of failure to promote in violation of the ADA and does not mention retaliation. Nevertheless, the plaintiff insists that her claims of retaliation or harassment are properly within the scope of her EEOC charge because they were made in her intake questionnaire,

and she urges that we regard this document as part of her charge. We have previously considered the intake questionnaire to establish the date of Ms. Rogan's first contact with the EEOC, and, in the interest of thoroughly disposing of the plaintiff's arguments against the dismissal of her claims, we will address it here as well.

The intake questionnaire states in pertinent part:

In addition to denying me the opportunity to take the full time position because they claimed I was unable to physically do the job, I believe my employer has also retaliated against me for attempting to uphold my rights. After the union grievance was denied, I contacted an attorney, Kenneth Wargo, who wrote several letters on my behalf to Giant Eagle in an attempt to get this matter resolved. Since that time, my scheduled hours at Giant Eagle have been drastically reduced and I have been subjected to various forms of embarrassment and mistreatment by my supervisors.

(Pl.'s Ex. A, intake questionnaire continuation page).

These allegations are not part of the charge prepared by the EEOC and signed by the plaintiff. Ms. Rogan signed and attested to this document on April 3, 1998.

■ As a general rule, a plaintiff under Title VII cannot bring claims in a civil lawsuit that were not included in her EEOC charge. *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 47, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). Courts in this jurisdiction have long recognized that the exhaustion requirement serves two important purposes:

First, it puts the employer on notice that a complaint has been lodged against him and gives him the opportunity to take remedial action. Second, it gives the EEOC notice of the alleged violation and an opportunity to fulfill its statutory responsibility of seeking to eliminate any alleged unlawful practice by informal

methods of conciliation, conference, and persuasion.

*Bihler v. Singer Co.,* 710 F.2d 96, 99 (3d Cir.1983) (internal citations omitted).

"The relevant test in determining whether [defendant] was required to exhaust her administrative remedies is whether the acts alleged in the subsequent ... suit are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." *Antol v. Perry,* 82 F.3d 1291, 1295 (3d Cir.1996) (quoting *Waiters v. Parsons,* 729 F.2d 233 (3d Cir. 1984)). Whether a complaint is encompassed by the scope of the EEOC charge and subsequent investigation is a question frequently presented in employment discrimination cases. Where the allegations in the complaint are sufficiently distinct from those presented in the EEOC charge, and were not part of the Commission's investigation, courts have required the exhaustion of administrative remedies before such allegations could be pursued in district court.

Few courts, however, have considered the precise question we must decide, which is whether claims made in an intake questionnaire but subsequently omitted from the charge and not investigated by the Commission are properly considered part of the charge itself, so that we must consider them when addressing whether plaintiff's civil complaint falls within the scope of the EEOC charge. Decisions evaluating the function of the intake questionnaire, including those cited by the plaintiff, have usually been concerned with establishing a filing date.

One case deciding whether claims presented only in the questionnaire were nevertheless within the scope of the EEOC charge was *Carter v. Philadelphia Stock Exchange,* 1999 WL 715205 (E.D.Pa. Aug.26, 1999). Carter raised ADA claims in her intake questionnaire that were not included in the charge. The court concluded that a reasonable EEOC investigation into the claims of sex discrimination and retaliation, which were in the charge,

would include her ADA claims, and thus permitted the complaint to proceed in district court.

The analysis in *Carter* has not persuaded us that we should permit Ms. Rogan's claims to go forward. It does not appear to us that a reasonable EEOC investigation into the ADA claims in plaintiff's charge, which involve Giant Eagle's failure to promote her to a particular position, would have encompassed the totally separate allegations of retaliation or harassment, which according to the complaint did not begin until "after Plaintiff began questioning the Defendant's failure to assign her to the meat wrapper position," and which are found only in the intake questionnaire. Compl. at ¶ 23. In addition, we note that the only issue in *Carter* was the scope of the charge; both the EEOC charge and the intake questionnaire were timely filed and the question of a continuing violation was not presented.

The district court in *McCray v. DPC Industries, Inc.,* 942 F.Supp. 288 (E.D.Texas 1996), also addressed circumstances where the plaintiff had never raised a retaliation claim in the EEOC charge, but contended that he had presented the issue in a letter appended to his intake questionnaire and that this was part of the charge. The court rejected McCray's argument that an intake questionnaire and a charging document were equivalent, and granted summary judgment on the retaliation claim for failure to exhaust administrative remedies. *Id.* at 295.

The Seventh Circuit has explained the distinction between these two documents, in a case where the plaintiff contended that the EEOC had misled him into believing the intake questionnaire constituted a formal charge and therefore was responsible for his untimely filing,:

> To treat Intake Questionnaires willy-nilly as charges would be to dispense with the requirement of notification of the prospective defendant, since that is a

requirement only of the charge and not of the questionnaire. The short statutes of limitations in employment cases have a purpose—both backpay obligations and the difficulty of reintegrating a terminated worker into the workforce grow with each day that passes before an employment dispute is resolved—and it is ill served when the employer does not receive prompt notice of the dispute. *Early v. Bankers Life and Cas. Co.*, 959 F.2d 75, 80–81 (7th Cir.1992), (citing *Delaware State College v. Ricks*, 449 U.S. 250, 256–57, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980)).

We agree with the Seventh Circuit that the EEOC charge and the intake questionnaire serve separate purposes. One cannot substitute for the other. Here, although allegations of retaliation appear in the questionnaire but not in the charge, it is apparent from the record that Ms. Rogan received the charge, signed and dated it, and saw no reason to make any corrections to it. Her notarized signature attests that "I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief." (Def.'s Ex. B). The complaint in this case does not allege that the charge as prepared by the EEOC was in any way flawed, and the plaintiff does not contend that the Commission omitted a necessary factual basis for her claim.

The letter summarizing the evidence obtained by the EEOC during its investigation of plaintiff's allegations also shows that the EEOC was only addressing the the claim that Giant Eagle failed to promote her in violation of the ADA. (Def.'s Ex. D–1). The letter makes absolutely no reference to any claims for retaliation or to any evidence of harassing behavior on the part of the defendant. The letter invites the plaintiff to "provide any other information you want considered" within ten days of the date of the letter, and informs her that if she provides no further information "the determination will issue based on the evidence in the file." The letter is addressed to the plaintiff, and is copied to her attorney. A handwritten notation at the end of the letter indicates that the Commission received "no response or rebuttal from CP or CP atty" and is signed and dated "072199." (Def's Ex. D–1). The EEOC right to sue letter is dated that same day. (Def's Ex. D–2).

We find that the substantive allegations made in the EEOC charge of discrimination and the intake questionnaire must be considered as two separate and distinct documents. Procedurally, a court may consider the date on the questionnaire for purposes of establishing the filing date with the Commission, as we have done in this case. However, it is quite another thing entirely for a court to equate the two documents, so that issues raised in the intake questionnaire which are not part of the actual charge and which have not been addressed by the EEOC in its investigation, may nevertheless be considered a part of that charge. If we made the allegations in the intake questionnaire part of the charge itself, and therefore permitted the plaintiff to pursue claims made only in the questionnaire and not investigated by the EEOC, we would be circumventing the role of the Commission as well as depriving the defendant of notice of all claims against it.

Although the intake questionnaire includes allegations that the defendant retaliated against the plaintiff after she questioned its decision not to promote her to the meat wrapper position, we must conclude that these allegations are not within the scope of the EEOC charge of discrimination and therefore they are not properly before this Court. Accordingly, we find that the plaintiff has failed to exhaust her administrative remedies as to her claims of harassment and retaliation, and thus cannot pursue them here under any theory, including continuing violation.

### C. Equitable Tolling

In a final effort to rescue her time-barred claims, the plaintiff invokes

our equitable authority to toll the statute of limitations. Since the time limitations set out in Title VII are not jurisdictional, they are subject to equitable modification by the court. *Oshiver*, 38 F.3d at 1387 (citing *Hart v. J.T. Baker Chemical Co.*, 598 F.2d 829, 831 (3d Cir.1979)). When a discrimination claim appears to be time-barred, the burden is on the plaintiff to assert facts that justify equitable tolling of the statute of limitations. *Arizmendi*, 914 F.Supp. at 1160 (citing *Byers v. Follmer Trucking Co.*, 763 F.2d 599, 600–01 (3d Cir.1985)).

This circuit has held that equitable tolling may be appropriate in three situations: (1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff asserted his or her rights mistakenly in the wrong forum. *Oshiver*, 38 F.3d at 1387 (internal citations omitted).

Ms. Rogan does not argue that she was prevented from asserting her rights, or that she mistakenly filed in the wrong forum. Her brief in opposition to dismissal contends that the defendant misled her about the reason she did not get the meat wrapper position, by initially informing her that it was a Collective Bargaining Agreement issue involving seniority, and later telling her through the letter of October 6, 1997 that she was not promoted because of a perceived inability to perform the duties the position required. (Pl.'s Br. in Opp'n at 15). She claims that she herself was not aware of this letter until late November of 1997, and that the statute of limitations should be tolled until that date so that her EEOC charge would be timely filed.

The relevant allegations in the complaint are these:

18. Despite being qualified for this meat wrapping job and able to perform the required duties of the job with or without a reasonable accommodation, Plaintiff was not given the job. The job instead was given to a less senior employee with no known disability.

19. Plaintiff made repeated inquiries with both the management of the Defendant and with her union, the United Food & Commercial Workers Union, in an effort to determine why she had not been given the meat wrapping job.

20. In a letter from the Director of Employee and Labor Relations of the Defendant dated October 6, 1997, Plaintiff was informed that she had not been given the meat wrapping job because at the time of the bid she was unable to perform the duties required due to medical limitations.

21. Plaintiff contends that she was physically capable of performing the meat wrapping job at the time the bid was posted, and that the Defendant knew or should have known that she was physically capable of performing the job, and the Defendant's post hoc contention that she had not been given the job because of medical limitations was false and a pretext.

Making all inferences in Ms. Rogan's favor, the averments in the complaint do not suggest that the defendant actively misled her as to the reason she was not promoted to meat wrapper. At best, the complaint states that the plaintiff did not know the reason why she was not promoted until the letter of October 6, that she disagrees with the outcome of the grievance process, and that she is convinced the company was wrong in deciding that she could not do the job.

Filing a grievance pursuant to a collective bargaining agreement does not extend or otherwise affect applicable statutory filing deadlines. *International Union of Electrical, Radio and Machine Workers, AFL—CIO, Local 790 v. Robbins & Myers, Inc.*, 429 U.S. 229, 97 S.Ct. 441, 50 L.Ed.2d 427 (1976). The complaint does not claim that Giant Eagle actively deceived her so as to prevent her from filing

a timely charge with the EEOC. Nor does the charge she filed with the EEOC contend that the company misled her or deceived her as to why she did not receive the promotion. (EEOC Charge, Def.'s Ex. B). Furthermore, this is not a case where tolling is appropriate because the defendant misled the plaintiff about the existence of a claim until after the entire statutory period had run. Even the October 6th letter was well within 300 days of the date Ms. Rogan knew she had not been promoted, and there was ample time remaining in which she could have filed a timely charge.

Since plaintiff has not met her burden of showing that the statute of limitations in this matter should be equitably tolled, we reject that argument and find that the plaintiff's charge of discrimination was untimely filed with the EEOC.

### D. Claims filed under the PHRA

The PHRA requires that a charge of discrimination be filed within 180 days of the alleged discriminatory act. We have determined that the alleged discriminatory act was Giant Eagle's decision not to promote the plaintiff to the position of meat wrapper, and that the plaintiff learned that she had not been promoted on March 4, 1997. Ms. Rogan filled out an intake questionnaire on April 3, 1998, and filed her charge with the EEOC on June 9, 1998, indicating that it was also to be filed with the Pennsylvania Human Relations Commission ("PHRC") in accordance with the statute. For the reasons stated above, we find that the claims brought under the PHRA were untimely filed and therefore will be dismissed.

### Conclusion

We find that the charge Ms. Rogan filed with the EEOC and the PHRA was untimely; that the allegations setting forth claims for failure to promote in violation of the ADA do not allege a continuing violation; that the allegations setting forth claims for harassment and retaliation are not properly before this Court because

plaintiff failed to exhaust her administrative remedies; and that none of plaintiff's claims are saved by the doctrine of equitable tolling. As timeliness is a prerequisite to maintaining this action in the district court, we will grant defendant's motion and dismiss the complaint in its entirety. An appropriate Order follows.

### ORDER

AND NOW, to-wit, this 21st day of September, 2000, for the reasons set forth in the accompanying opinion, IT IS HEREBY ORDERED, ADJUDGED, and DECREED that the motion to dismiss filed by defendant Giant Eagle, Inc. (Doc 5) be and hereby is GRANTED, and plaintiff's complaint is hereby dismissed in its entirety.