Thomas I. KOVOOR, Plaintiff,

v.

SCHOOL DISTRICT OF
PHILADELPHIA,
Defendant.

No. 00–CV–5873.

United States District Court,
E.D. Pennsylvania.

July 15, 2002.

Anser Attmad, Harrisburg, PA, for plaintiff.

Andrew M. Rosen, Philadelphia, PA, for defendant.

### MEMORANDUM AND ORDER

ANITA B. BRODY, District Judge.

Plaintiff Thomas I. Kovoor ("plaintiff" or "Kovoor") instituted suit against his employer, the School District of Philadelphia ("defendant" or "district"), alleging that the defendant violated his rights pursuant to 42 U.S.C. § 1981 (" § 1981") and the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) et. seq. ("Title VII"). Kovoor claims these violations began in 1985 and continued through July 2000. Kovoor, who is Indian and works in budget and accounting for the district, claims that during this period of time the defendant subjected him to a hostile work environment and discriminated against him on the basis of his race in denying him several promotions. On February 29, 2000, plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC"). He received a notification of his right to sue on August 28, 2000 and filed this suit against the district on November 17, 2000. Kovoor is seeking compensatory and punitive damages, attorney's fees, and any other relief this court finds appropriate. Additionally, plaintiff requests that the district review and reconstruct his personnel records to reflect the promotions and salary increases he would have received but for the illegal discrimination and to expunge all negative remarks reflecting this discrimination. On January 18, 2002, the district moved for summary judgment. Now before me is that motion.

### I. Factual Background [1]

Thomas Kovoor began working for the School District of Philadelphia in the position of Accounting Clerk on January 7, 1985. (Personnel Transaction Form, # 4733). On July 22, 1985, plaintiff became a Fiscal Clerk. (Employment Action Form, NIP 0093). Less than four months later, on November 1, 1985, the district took plaintiff from the eligibility list and made him a Financial Management Trainee. (Personnel Transaction Form # 3498). After that appointment, Herbert Schectman ("Schectman"), the Manager of the Post Audit section, became Kovoor's supervisor. Almost from the outset of this relationship, plaintiff and Schectman did not get along. Though plaintiff does not pinpoint precise dates, he alleges that on a daily basis, Schectman harassed him, making generally disparaging comments and on at least one occasion referring to Kovoor and Africa–American employees as the "sons of slaves." (Dep. of Kovoor, 101). In December 1985, at the office holiday party, Schectman asked the new employees to introduce themselves. When plaintiff's turn came, he stood up, but before he could finish Schectman demanded that he "shut up and sit down." (Kovoor Aff., ¶ 2).

In addition to these interpersonal difficulties, plaintiff also felt some dissatisfaction in regard to his substantive work. More specifically, Kovoor believed that he regularly received assignments to conduct

---

1. As is appropriate on defendant's motion for summary judgment, I have presented these facts in the light most favorable to the plaintiff and drawn all reasonable inferences in his favor.

audits in schools located in "underprivileged neighborhoods." (Complaint, ¶ 21). Regardless of these wrinkles, plaintiff became an Auditor I on November 10, 1986. (Employment Action Form, NIP # 1420). After his promotion, plaintiff sought to expand the scope of his experience and requested an assignment other than a school audit. Kovoor's immediate supervisor, Thomas Doughty, brought this request to Schectman who denied it. (Kovoor Aff., ¶ 4). Shortly after this denial, Schectman approached plaintiff in front of another co-worker and asked, "what kind of race are you anyway?". (Kovoor Aff., ¶ 5; Washington Aff., ¶ 5).[2] Later that summer, Schectman again denied Kovoor a new opportunity—the chance to conduct a high school audit on his own. While completing an audit independently is not a requirement for advancement, plaintiff contends it is "almost a right of passage." (Kovoor Aff., ¶ 7). Plaintiff cites other incidents of harassing conduct during the summer of 1987, including Schectman's refusal to excuse him early to go to a doctor's appointment and refusing to give him a new assignment after prompt completion of an audit, leaving plaintiff with no work to do for a three month period. (Kovoor Aff., ¶¶ 8, 9).

In November 1987, Kovoor was due for a routine promotion from the Auditor I to the Auditor II position. While his two colleagues due on the same day received the new title, plaintiff did not. When he met with Schectman about this denial, Schectman indicated that in his personal judgment Kovoor should not receive a promotion. Plaintiff appealed the decision to

Sheldon Jahss, Schectman's supervisor who refused to overrule Schectman. (Kovoor Aff., ¶ 10). The following month, plaintiff requested and received a transfer out of Schectman's department and moved to the Pre–Audit section, working under the supervision of Bonnie Rosen ("Rosen"). After several months there, on March 14, 1988, Kovoor received his promotion from Auditor I to Auditor II. (Employment Action Form, NIP # 1643). Though happier with his day to day work in his new position, Kovoor sought a transfer into either the Categorical Finance or Financial Planning and Analysis sections for "career advancement prospects." (Request for Transfer, December 9, 1988). On January 30, 1989, the district transferred plaintiff to the Office of Categorical Finance, moving him to the position of Budget Analyst II. However, in May 1989, plaintiff requested a return to his former position and his manager, William Kozlowski ("Kozlowski"), honored that request, and Kovoor returned to work in the audit department as an Auditor II under Rosen. (Mem. from Kozlowski to George Branch, May 18, 1989). Plaintiff was unhappy as his immediate supervisor had shown little interest in training him and Rosen had indicated she could use his assistance on a major project. (Dep. of Kovoor, 63–65).

In 1989, Kovoor applied for an Auditor III position. The district required that all applicants sit for both a written and oral examination. Schectman refused to allow plaintiff to take the tests because he did not have twenty-four credits in accounting.[3] (Kovoor Aff., ¶ 11). Though plaintiff

**2.** Plaintiff appears unsure about the timing of this comment. In his complaint he alleges it took place just a few days after the incident at the holiday party, in December 1985, while in his affidavit he indicates it occurred at some point in the Spring of 1986. Because the affidavit is a more recent document I have

adopted its placement. However, the difference between the dates in no way effects the disposition of this motion.

**3.** Plaintiff was working under the supervision of Bonnie Rosen in 1989. It is unclear why

does not dispute that the job required such experience, he claims that in the past Schectman had promoted others who lacked the requisite number of credits, but in a discriminatory manner refused to ignore or waive the requirement for him. He claims that defendant promoted at least one similarly situated non-Indian to Auditor III, even though she lacked a CPA degree. (Amended Complaint, ¶ 28). In 1990, Kovoor applied for an Administrative Analyst III position in the Transportation Department. Plaintiff finished second in the examination process but did not receive the job, which the district awarded to the applicant finishing first, a non-Indian female. (Eligible List, Position # 1577; Amended Complaint, ¶ 30). The following year, Kovoor submitted his application for the job of manager of the Transportation Department. Though he finished first on the written exam, his final rank was second after the subjectively evaluated oral portion of the test was factored into his score. (Eligible List, Position # 7523). Once again, the individual ranked first received the position, this time a non-Indian male. In 1992, Kovoor applied a third time for a position in the transportation department. According to plaintiff he finished first in the written examination, but yet again lost the promotion based on the subjective oral examination administered by a "biased interview panel." (Kovoor Aff., ¶ 33). In 1994, plaintiff applied yet again for a promotion in the Transportation Department. This time, Kovoor failed the written portion of the exam, rendering him ineligible for promotion. Plaintiff contends that during this examination Kozlowski, accompanied by another employee,

pointed to his test and stated, "Hey Swami, don't you get this?!" (Amended Complaint, ¶ 35). Plaintiff subsequently approached Rotan Lee, the president of the school board, by leaving a note at his office, expressing concerns with the validity of his test scores. However, he never formally requested an inquiry into the matter or filed a grievance because he believed such actions would be futile. (Kovoor Dep., 36–40).

In January 1995, plaintiff requested another transfer, this time looking for "better prospects." (Request for Transfer, January 25, 1995). In the fall of that year, defendant upgraded a Financial Management Trainee position to a Budget Analyst II position and returned Kovoor to the Categorical Finance Department and the supervision of Kozlowski. (Employment Action, October 23, 1995). Kozlowski regularly referred to Kovoor as "Gungadin," threatened to "nuke India," and made generally disparaging comments related to his ethnicity. (Amended Complaint, ¶ 48(b)).[4] In March 1996, plaintiff submitted an application for the apprentice teacher program. (App. for Apprentice Teacher Program, March 10, 1996). In relation to that application, defendant indicated that it needed to have Kovoor's undergraduate degree from India evaluated. While uncertain of the precise dates, sometime between the submission of his teaching application and the end of 1998, the evaluator informed the district, who then informed plaintiff, that his Indian degree was fifteen or sixteen credits short of an equivalent United States degree. (Kovoor Dep., 27–

Schectman had any influence over whether plaintiff could sit for the promotional exam.

4. Plaintiff fails to indicate when these comments began. Plaintiff worked under the supervision of Kozlowski at separate times, briefly in 1989 and again in 1995. In consid-

ering the motion, I have inferred that these comments pervaded plaintiff's entire relationship with Kozlowski. The only specific reference is to 1988–1989 and the "swami" comment during the 1994 exam.

29). Defendant never hired Kovoor as a teacher.

Due to budget constraints, the district laid off plaintiff effective July 1, 1996. (Letter from Mark Spector to Kovoor, June 14, 1996). On November 8, 1996 defendant rehired plaintiff in the position of School Operations Officer, which involved a pay cut of approximately $12,000 from his salary as Budget Analyst II. (Employment Action, November 8, 1996). In this new position, plaintiff works from a specific school site, rather than the district's administrative offices. From October 1999 through June 2000, Kovoor worked at the Jay Cooke Middle School. Plaintiff claims that while there, he suffered unfair treatment at the hands of the principal, Dr. JoAnn Caplan ("Caplan"). At several points she has embarrassed plaintiff by telling him at a luncheon that "That food is not meant for you, put it down," and falsely alleged he acted insubordinately. The school cut Kovoor's position for the 2000–2001 school year, but permitted a similarly situated non-Indian employee to remain at the school and work overtime. (Kovoor Aff., ¶ 18).

In addition to his difficulties in his job as a School Operations Officer, plaintiff alleges that defendant hired others into the Office of the Internal Controller, which precluded his opportunity for reinstatement into a position equivalent to the one he held prior to the lay off. (Amended Complaint, ¶ 40). When Kovoor confronted Sheldon Jahss ("Jahss"), the Internal Controller, about why the district would not rehire him to a similar job, plaintiff claims that Jahss told him, "your degree is in question." In 1998, the district hired several non-Indians for the Budget Analyst II and III positions. Prior to that

hiring, both Jahss and Kozlowski, Director of Categorical Finance, told Kovoor they would not consider him for the position. Kovoor claims he had forwarded records showing twenty-four credits in accounting from community colleges in the United States, attempting to compensate for those credits lacking in his undergraduate degree, but the district failed to consider them, insisting on a degree from an American institution. (Kovoor Aff., ¶ 16). In December 1999, defendant hired two other non-Indian individuals for Budget Analyst II and III positions. The district neither notified nor considered plaintiff for these positions. When plaintiff discussed this matter with Kozlowski, Kozlowski attributed the failure to consider plaintiff to the fact that his "degree is from India." (Kovoor Dep., 97). Plaintiff filed his EEOC charge on February 29, 2000 and filed this lawsuit on November 17, 2000.[5] Plaintiff continues to work for the School District of Philadelphia.

## II. *Summary Judgment Standard*

The court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The trial court must determine if there are issues with regard to material facts that warrant a trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When making this determination, the court must consider the underlying facts in the light most favorable to the nonmoving party, giving that party the benefit of all reasonable inferences that

---

**5.** Plaintiff indicates he filed the charge on or about March 3, 2000. The actual EEOC complaint is dated February 29, 2000. I have adopted the date on the charge itself, though it does not effect the statute of limitations or other legal issues relevant to this case.

might be drawn from those same facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Sempier v. Johnson and Higgins*, 45 F.3d 724, 727 (3d Cir.1995) (en banc). It is appropriate to grant summary judgment if the court finds that the record "could not lead a rational trier of fact to find for the nonmoving party, [and] there is no 'genuine issue for trial.'" *Matsushita* 475 U.S. at 587, 106 S.Ct. 1348 (citation omitted).

### III. *Discussion*

Defendant claims it is entitled to summary judgment on a number of different grounds. First, the district argues that plaintiff cannot bring a Title VII hostile environment claim because he failed to include this claim in his EEOC charge and has therefore failed to satisfy a jurisdictional prerequisite to bringing suit. Defendant next asserts that the applicable statute of limitations bars both Kovoor's Title VII and § 1981 claims, rendering the claims untimely. Finally, reaching the merits of plaintiff's claims, defendant contends that based on the undisputed facts of the case, plaintiff cannot demonstrate a prima facie case of the failure to promote or a hostile work environment. I will consider each of defendant's arguments in turn.

### A. *Plaintiff's EEOC charge includes a hostile work environment claim*

■ Title VII requires that prior to instituting a lawsuit in federal court, a plaintiff must file a timely claim with the EEOC or a similar state agency. *See* 42 U.S.C. § 2000e–5(e) (2000); *Communications Workers of Am. v. New Jersey Dep't*

*of Pers.*, 282 F.3d 213, 218 (3d Cir.2002). "Because the aim of the statutory scheme is to resolve disputes by informal conciliation, prior to litigation, suits in the district court are limited to matters of which the EEOC has had notice and a chance, if appropriate, to settle." *Anjelino v. New York Times Co.*, 200 F.3d 73, 93 (3d Cir. 1999). The court should determine if the substance of the of the Title VII suit falls "'fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom'" *Antol v. Perry*, 82 F.3d 1291, 1295 (3d Cir.1996) (*quoting Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir. 1984)). The Third Circuit has cautioned against reading a plaintiff's EEOC complaint too narrowly. When considering the scope of the original charge courts must "keep in mind that charges are drafted by one who is not well versed in the art of legal description ... the scope of the original charge should be liberally construed." *Hicks v. ABT Assoc., Inc.*, 572 F.2d 960, 965 (3d Cir.1978).

■ The district argues that plaintiff failed to raise a hostile environment claim in his EEOC complaint, and therefore did not satisfy a jurisdictional prerequisite to bring a Title VII hostile environment claim in federal court.[6] In the charge, Kovoor lists the date of 12/15/97 for both the earliest and latest dates the discrimination took place. Plaintiff goes back only as far as 1996 in the narrative portion of the charge and alleges that since that time Kozlowski and others within the district denied him job opportunities and promotions in a discriminatory fashion and on the basis of his race. He does not mention any of the derogatory remarks made by either

---

6. Claims brought pursuant to § 1981 do not have similar prerequisites to filing in federal court. *See Cardenas v. Massey*, 269 F.3d 251, 255 (3d Cir.2001). Therefore, any discussion of the EEOC charge is only relevant in so far

as it is assumed that plaintiff brings his hostile environment claim under Title VII, and not § 1981. The district does not raise this argument in relation to the failure to hire claim.

Schectman or Kozlowski, nor does he include any reference to his unsuccessful applications for the various positions in the Transportation Department. (EEOC Charge of Discrimination, February 29, 2000).

A hostile work environment exists where a plaintiff can demonstrate that based on his or her race, gender, or national origin, he or she was subjected to pervasive and regular actions in the work place that affected them personally, and would also affect a reasonable person in the same position. *See Weston v. Pennsylvania*, 251 F.3d 420, 426 (3d Cir.2001). Plaintiff could certainly have made his EEOC charge more explicit concerning the consistent, or "pervasive and regular," pattern or practice of racial discrimination, resulting in a hostile work environment. However, even though plaintiff limited his EEOC complaint to a relatively brief period of time, the issues at the core of Kovoor's EEOC charge are consistent with the substance of a Title VII hostile environment lawsuit—the consistent mistreatment of plaintiff based on his national origin. In the course of its investigation, the EEOC may well have uncovered evidence of the antagonistic relationship between plaintiff and Kozlowski, plaintiff's many attempts at promotion, and comments made throughout the years reflecting a negative view of people of Indian origin. *See Antol*, 82 F.3d at 1295. Kovoor gave clear indication he based his claim on national origin discrimination. *Cf. id.* (rejecting plaintiff's argument that claim of disability discrimination also encompassed gender discrimination claim). Though substantively his complaint more closely resembles a failure to hire claim, a broad reading of the EEOC charge provides notice of national origin discrimination spanning a period of at least four years. Adopting this liberal construction and giving plaintiff the benefit of all reasonable inferences, Kovoor's Title VII hostile environment claim is not deficient for failure to exhaust.

**B.** *The statute of limitations bars some, but not all, of plaintiff's claims*

▇ Not only must a plaintiff file his or her Title VII claim with the EEOC or its state or local equivalent, he or she must do so within 300 days of the alleged actions or practice that constitute illegal discrimination. *See Mroczek v. Bethlehem Steel Corp.*, 126 F.Supp.2d 379, 385–86 (E.D.Pa. 2001). Federal courts using the limitation period for personal injury under Pennsylvania law and apply a two year statute of limitations to a claim under Section 1981. *See Williams v. Home Depot, U.S.A., Inc.*, 1999 WL 788597 at *3, No. CIV. A. 98–CV–3712 (E.D.Pa. October 5, 1999). Though courts generally adhere to these limitations periods, the Supreme Court has recognized that certain exceptions exist. Where a plaintiff has difficulty identifying precisely when the illegal conduct occurred or a violation is continuous and ongoing, the filing requirement is "a requirement that, like a statute of limitation, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982).

The continuing violation theory is one of these equitable exceptions and permits a plaintiff to "pursue a Title VII claim for discriminatory conduct that began prior to the filing period if he can demonstrate that the act is part of an ongoing practice or pattern of discrimination of the defendant." *West v. Philadelphia Elec. Co.*, 45 F.3d 744, 754 (3d Cir.1995). The doctrine also applies to claims under § 1981. *See Clark v. Sears, Roebuck & Co.*, 816 F.Supp. 1064, 1069 (E.D.Pa.1993). In order to successfully present a continuing violation claim, the plaintiff must demon-

strate that: (1) at least one discriminatory act occurred within the actual filing period and (2) the discrimination was not comprised of "isolated, intermittent acts of discrimination," but instead of a "persistent, on-going pattern." *Id.* at 754–55. Once a plaintiff has demonstrated a continuing violation, plaintiff may recover for the entire violation and offer evidence of all events that compose the violation. *See id.* at 755. If the plaintiff does not establish a continuing violation, he or she may recover only for the conduct within the applicable statutory period.[7] The Third Circuit has enumerated several factors relevant to determining whether or not a continuing violation exists. These include the subject matter of the various incidents, the frequency at which they occur, and most importantly, their "degree of permanence." *Rush v. Scott Specialty Gases, Inc.*, 113 F.3d 476, 482 (3d Cir.1997).

A hostile environment claim enjoys a "natural affinity" with a continuing violation claim. The individual events that will trigger knowledge of a violation are insufficient to make out a hostile environment claim. Because such a claim depends on a sustained pattern of behavior, courts often find it necessary to look at evidence of incidents occurring both before and after the relevant filing periods. *West v. Philadelphia Elec. Company*, 45 F.3d 744, 755 (3d Cir.1995). However, a failure to promote claim creates the opposite situation. When the alleged actions of the defendants are of the type that should trigger "an employee's awareness of and duty to assert his or her rights," then there is less likelihood that a continuing violation has occurred. *Id. (quoting Berry v. Board of Supervisors of Louisiana State Univ.*, 715 F.2d 971, 981 (5th Cir.1983)). The failure to be considered for or receive a promotion is one of these triggering events. "An allegation that an employer failed to promote an employee on the basis of [national origin] is a discr[ete] claim under Title VII." *Keitt v. School District of Philadelphia*, No. CIV. A. 96–4739, 1998 WL 341949 *4 (E.D.Pa. June 24, 1998) (*citing Rush*, 113 F.3d at 483–85, for the proposition that failure to promote is not a continuing violation). A court does not need to look beyond the scope of the actual failure to hire to comprehend the merits of a plaintiff's failure to promote claim. Therefore, a plaintiff cannot rely on a series of failures to promote to extend the relevant statutory period, because each individual rejection of the plaintiff was actionable under the civil rights laws.

Defendants contend that many of Kovoor's allegations fall outside of the relevant statute of limitations and the continuing violation doctrine cannot save those claims. In the instant case, plaintiff's allegations include a hostile environment claim and a claim for failure to promote, brought pursuant to both Title VII and § 1981.[8] Kovoor filed a claim with the

---

7. The plaintiff may still present evidence of discriminatory acts outside of the filing period if admissible under the Federal Rules of Evidence. *See id.; Williams v. Home Depot, U.S.A., Inc.*, 1999 WL 788597, No. CIV. A. 98–CV–3712 at *3 (E.D.Pa. October 5, 1999).

8. It is unclear if plaintiff brings his claims under Title VII or § 1981 as his complaint and subsequent pleadings take inconsistent positions. In the amended complaint filed with the court on April 6, 2001, plaintiff titles his first cause of action "Discrimination Based on National Origin, Race, Color," and demands judgment pursuant to Title VII and § 1981. (Amended Complaint, ¶ 52). He calls his second cause of action "Hostile Work Environment" and demands judgment pursuant to Title VII, omitting any citation to § 1981. (Amended Complaint, ¶ 55). However, in his reply to defendant's motion for summary judgment, in a section devoted to the discussion of his hostile environment claim, Kovoor asserts that his "claims also arise under 42 U.S.C. § 1981." (Amended

EEOC on February 29, 2000. Title VII requires that Kovoor file his claim with the appropriate state agency within 300 days of the alleged illegal discrimination. *See Mroczek,* 126 F.Supp.2d at 385–86. Therefore, unless the continuing violation theory or another type of equitable tolling applies, any claim brought under Title VII and based on an incident of discrimination that occurred prior to May 5, 1999, is time-barred. Kovoor filed his lawsuit in federal court on November 17, 2000. Kovoor's § 1981 claim is subject to a two year statute of limitations and he need not assert that right in his EEOC filing. *See Williams,* 1999 WL 788597 at *3. Therefore on the § 1981 claim, plaintiff may not recover for any instances of discrimination that took place prior to November 17, 1998, without the aid of either the continuing violation doctrine or some other type of tolling.

To demonstrate a continuing violation, Kovoor must show that: (1) at least one discriminatory act occurred within the statutory period and (2) the conduct was part of an ongoing pattern. *See West,* 45 F.3d at 754–55. The Third Circuit has clearly stated that the continuing violation doctrine does not apply to claims concerning the failure to promote. *See Rush,* 113 F.3d at 483–85. Therefore, Kovoor may only pursue his Title VII failure to promote claim concerning the Budget Analyst II and III positions that became available in December 1999. He may pursue this same claim under § 1981 for those Budget Analyst positions as well as those filled by non-Indians in 1998, provided the 1998 hiring took place after November 17, 1998.

▇ In regard to his hostile environment claim, Kovoor has demonstrated the first element of the continuing violation

doctrine, as at least one discriminatory act took place within the statutory period. Kozlowski's statement concerning Kovoor's Indian degree took place in December 1999, well within the 300 day period under Title VII and the two year period under § 1981. Plaintiff, however, has not shown the second prong, that the discriminatory act, here Kozlowski's comment, was part of an ongoing pattern of behavior. Though the subject matter of the various incidents of discrimination is consistent—discrimination based on Kovoor's Indian origins—the long breaks between incidents and the significant "degree of permanence" attached to many of them, push against applying the continuing violation doctrine. *Rush,* 113 F.3d at 482. Though plaintiff alleges a hostile environment as far back as 1985, and he has not cited any incidents or remarks between late 1987 and 1989. Defendant's failure to promote plaintiff to the Auditor II position in November 1987 triggered his obligation to pursue any claim in relation to those early incidents long before February 2000. Beginning in 1989 plaintiff consistently applied for promotions and defendant either refused to let plaintiff complete the application process, or awarded the job to someone outside of Kovoor's protected class. Though these incidents occurred consistently, roughly once a year, each one, as a failure to promote, individually obligated Kovoor to pursue his claims. *See id.* at 483–85. Apart from the repeated failure to promote him and the conversations related to those failures, Kovoor has cited to only a single derogatory racial comment—when Kozlowski called him "Swami" during the 1994 promotion examination. This isolated comment does not demonstrate on ongoing pattern of racially offensive conduct.

Mem. of Law in Opp. to Def.'s Mot. for Summ. J., 15). Granting all inferences in favor of the plaintiff, I have assumed for purposes of this motion that plaintiff has brought each of his claims under both § 1981 and Title VII.

Because the continuing violation doctrine does not apply to either Kovoor's hostile environment or failure to promote claims, he must rely on incidents that took place between May 5, 1999 and the present to prove his Title VII claims, and November 17, 1998 and the present to prove his § 1981 claims. Plaintiff may not depend upon most of the incidents alleged in his complaint. Both the Title VII and § 1983 claims include only the December 1999 conversation with Kozlowski where he indicated plaintiff had not been considered for a promotion because his degree is from India and the alleged mistreatment by Caplan, the school principal and his supervisor in his new position. The § 1981 claims may also include the 1998 hiring of two non-Indians as Budget Analysts, without even considering plaintiff as a candidate.[9]

### C. Plaintiff has presented sufficient evidence to survive summary judgment on his failure to promote claim

To establish a prima facie claim for the failure to promote, a plaintiff must show that he or she: (1) belongs to a protected group; (2) applied for and had the requisite qualifications for an available job; (3) was rejected for that position; and (4) after the plaintiff's rejection, the defendant continued to seek applications from individuals with the plaintiff's qualifications. *See Bray v. Marriott Hotels,* 110 F.3d 986, 990 (3d Cir.1997) (*citing McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 805, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). If the plaintiff satisfies the elements of the prima facie case, the burden of production shifts

to the defendant to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. Once the defendant meets this burden, the plaintiff must present either direct or circumstantial evidence sufficient to cause a factfinder to disbelieve the legitimate reason articulated by the defendant or to believe that an illegal discriminatory motive more likely than not caused the adverse action. A plaintiff satisfies this requirement on summary judgment by showing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the defendant's reason that a rational factfinder might find them pretextual. *Fuentes v. Perskie,* 32 F.3d 759, 764–65 (3d Cir.1994).

Though a plaintiff must have applied for the position in order to satisfy the second prima facie element of a failure to hire or failure to promote discrimination claim, courts have not interpreted this requirement rigidly. If a plaintiff has not submitted a formal application for a position, he or she may still make out a claim "as long as the plaintiff made every reasonable attempt to convey his interest in the job to the employer." *EEOC v. Metal Serv. Co.,* 892 F.2d 341, 348 (3d Cir.1990). "When a person's desire for a job is not translated into a formal application solely because of his unwillingness to engage in a futile gesture he is as much a victim of discrimination as is he who goes through the motions of submitting an application." *Int'l Bhd. of Teamsters v. United States,* 431 U.S. 324, 366, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). Courts have found that plaintiff

---

9. In his complaint, plaintiff states that in 1998 defendant hired several non-Indians and that prior to that hiring, Jahss and Kozlowski informed plaintiff they would not consider him for the position. (Amended Complaint, ¶ 42). Neither party has presented any further evidence in relation to this claim and I do not

know at what point in 1998 the hiring and discussion occurred. On defendant's motion for summary judgment, I will assume that these events took place in the final six weeks of the year and permit them, in their bare form, to be a part of plaintiff's hostile environment claim.

effectively applied for a position when the employer never posted a vacancy and in the past the employee had generally expressed interest in a similar opportunity, where an employer relied exclusively on word of mouth communication and had actively discouraged applications from a protected class in the past, and where plaintiffs had expressed interest and applied for an identical position in the past. *See Metal Serv. Co.*, 892 F.2d at 348 (citations omitted).

Defendant argues that the court should grant summary judgment on plaintiff's failure to promote claim because Kovoor never applied for the positions in either 1998 or 1999, and therefore cannot satisfy the requirements for a prima facie case. In the alternative, the district asserts that because Kovoor did not have a bachelor's degree from an accredited college, he did not meet the minimum qualifications for the positions. Because I find that Kovoor in effect applied for the relevant positions and has raised the inference that the district's reasons for not hiring him were pretextual, I will deny defendant's motion for summary judgment on the failure to promote claim.

■ Defendant's contention that Kovoor never actually applied for the available positions is unpersuasive. Throughout his tenure with the district, Kovoor made his desire for advancement abundantly clear. He requested transfers for better advancement prospects as early as December 1988. In 1989 he applied for a position as an Auditor III. In the years following plaintiff attempted four times to obtain a new, higher, position in the Transportation Department. When the district rehired Kovoor as a School Operations Officer after the 1996 lay off, he specifically asked why he could not return to his position as Auditor II. Plaintiff admits that he did not apply for either the 1998 or 1999 positions. In 1998, Jahss and Kozlowski told plaintiff that the district would not consider his application and in 1999, plaintiff did not even learn of the jobs until after the defendant had filled the positions. Kovoor's consistent expression of his desire for promotion coupled with defendant's refusal to accept his application and its failure to post the openings, satisfies the application requirement of a prima facie case. Plaintiff made "every reasonable attempt to convey his interest in the job to the employer," and thus "applied for the positions in question, for purposes of his discrimination claim". *Metal Serv. Co.*, 892 F.2d at 348.

■ Defendants insists that plaintiff cannot demonstrate that he was qualified for the available positions. Kovoor does not dispute that each of the jobs he applied for in the relevant period required "completion of a bachelor's degree program at an accredited college or university." (Job Description, Budget Analyst II). He also recognizes that he did not have such a degree.[10] However, plaintiff contends that nonetheless he met the qualifications for those positions because the district permitted other employees lacking the "necessary" degrees to hold positions that required them. Specifically, Kovoor identifies six individuals in that situation. For each of these employees, the district has advanced some legitimate, non-discriminatory motive. Plaintiff, however, has satisfied his burden to survive sum-

---

**10.** Plaintiff does indicate that given his work experience and 24 credits in accounting from various community colleges, he considered it a "waste of time" to go back and finish his bachelor's degree. (Kovoor Dep., 94–96).

Though plaintiff may be arguing that he had equivalent qualifications for the jobs, he does not contend he had a bachelor's degree from an accredited institution.

mary judgment by raising the reasonable inference that the reasons offered by the district are pretextual. For example, while the district claims that a "grandfathering" policy that permitted certain individuals to maintain their positions, Kovoor points out that the district has failed to show the source of this policy or any written record of it. Based on this, a reasonable factfinder could conclude that the district's "grandfathering" policy amounts to no more than the individual and discriminatory preferences of supervising employees. Because Kovoor has raised this inference, I will deny defendant's summary judgment motion on the failure to promote claim. Kovoor may pursue this claim under Title VII with regard to the 1999 failure to hire and under § 1981 for the 1999 and 1998 failures to hire, once again provided that the 1998 events took place after November 17, 1998.

> D. *Plaintiff has not presented sufficient evidence to survive defendant's summary judgment motion on his hostile environment claim*

To establish a successful claim for hostile work environment discrimination based upon national origin under Title VII or § 1981 an employee must establish that: (1) he or she suffered intentional discrimination because of national origin; (2) the discrimination was "pervasive and regular;" (3) he or she was adversely affected by the discrimination; (4) the discrimination would adversely affect a reasonable person of the same national origin; and (5) that respondeat superior liability applies. *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1482 (3d Cir.1990) (discussing hostile environment based on gender). Rather than consider each piece of evidence individually, the court should consider in light of the " 'totality of the circumstances, the existence of a hostile or abusive environment.' " *Aman v. Cort Furniture Rental*

*Corp.*, 85 F.3d 1074, 1081 (3d Cir.1996) *quoting Andrews*, 895 F.2d at 1482. Relevant factors include the frequency and severity of the conduct, if it is "physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).

Title VII does not prohibit all workplace misconduct; allegations of isolated incidents cannot constitute a hostile work environment. *See Rush v. Scott Specialty Gases, Inc.*, 113 F.3d 476, 482 (3d Cir. 1997). Discrimination will be considered pervasive and regular where " 'incidents of harassment occur either in concert or with regularity.' " *Andrews*, 895 F.2d at 1484 *quoting Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1189 (2d Cir.1987). Additionally, a plaintiff alleging a hostile environment must demonstrate both subjective and objective elements. The employee must perceive the environment as hostile and show that a reasonable person would also find it hostile and abusive. This, however, does not mean that a plaintiff must suffer serious psychological harm in order to prevail on his or her claim. *See Harris*, 510 U.S. at 21–22, 114 S.Ct. 367. An abusive work environment might detract from job performance, result in an employee resigning his or her position, or prevent an employee from advancing in a career path, all without "seriously affect[ing] employees' psychological well-being." *Id.* at 22, 114 S.Ct. 367.

In this case, after examining the totality of the evidence, I find that Kovoor has not presented sufficient evidence to raise a reasonable inference that the district constituted a hostile work environment. Plaintiff's conversations with Kozlowski, the failure to offer him the

positions that became available in 1998 and 1999, and his conflicts with Caplan on his job site do not amount to pervasive and regular discrimination. The 1998 and 1999 refusals to hire compose a distinct claim, and do not meet the standards for a hostile environment claim. *See Rush*, 113 F.3d at 483–84. During the period relevant to the hostile environment claim, Kozlowski made two comments about Kovoor's degree being from India. He remarked on discrete occasions, approximately one year apart. Kovoor does not claim that defendant filled the time between those remarks with ongoing, or even occasional commentary on his national origin as had happened in the late 1980s. *Cf. West v. Philadelphia Elec. Co.*, 45 F.3d 744, 755–56 (3d Cir.1995) (finding prima facie case of hostile racial environment where consistent harassment took place between 1986 and 1990 and included harassing conversations, and offensive doll, posting photos of Ku Klux Klan members, and placing a burlap noose in the workplace). Moreover, plaintiff has failed to demonstrate any connection between the few incidents involving Dr. Caplan and his national origin. The disciplinary reports and disrespectful comments had no overt discriminatory aspect. Though the law also bars more subtle forms of discrimination, plaintiff has offered nothing that raises the inference that illegal animus motivated Caplan.[11] Because Kovoor did not suffer pervasive and regular discrimination during the relevant statutory periods, he cannot make out a hostile environment claim under either Title VII or

11. Even if plaintiff could demonstrate some connection between Caplan's actions and racial animus, her comments, even when coupled with those of other district employees, did not constitute pervasive and regular harassment sufficient to create a hostile work environment.

§ 1981. I will grant defendant's motion to dismiss plaintiff's hostile environment claim.

### ORDER

**AND NOW,** this day of July 2002, it is **ORDERED** that defendant's motion for summary judgment (docket entry # 26) is **GRANTED IN PART** and **DENIED IN PART**:

(1) Defendant's motion is **GRANTED** as to plaintiff's hostile environment claim; and

(2) Defendant's motion is **DENIED** as to plaintiff's failure to promote claim, subject to the relevant statutory period as described above.